Title Guarantee and Trust Co. *v.* Trenton Potteries Co.

*For affirmance*—LUDLOW—1.

---

TITLE GUARANTEE AND TRUST COMPANY, appellant,

*v.*

TRENTON POTTERIES COMPANY, respondent.

[Filed September 20th, 1897.]

1. In conformity with the general rule which admits in evidence the opinions of skilled witnesses on all subjects of science, the existence and meaning of the laws, as well *written* as unwritten, of another state, may be proved by calling professional persons to give their opinions on the subject.

2. The federal constitution (article 4, section 1), supplemented by the act of congress of May 26th, 1790, does not provide an *exclusive* method for proving the public acts of the various states of our union.

---

Appeal from order of the chancellor, dissolving an injunction. (No opinion filed.)

*Messrs. Corbin & Corbin*, for the appellant.

*Mr. James Buchanan* and *Mr. Howard R. Bayne* (of the New York bar), for the respondent.

The opinion of the court was delivered by

GUMMERE, J.

The appellant, the Title Guarantee and Trust Company, is a corporation organized under the laws of the State of New York, and the respondent, the Trenton Potteries Company, is a corporation organized under the laws of the State of New Jersey.

On the 27th day of September, 1895, the potteries company commenced an action against the title company in the New York supreme court upon a policy of insurance issued to it by the latter company.

On October 16th, 1895, the title company, after having been served with process and a copy of the complaint in the New York suit, filed its bill in the court of chancery of this state, alleging a mistake in said policy, and praying that the same be rectified and reformed, and that the potteries company might be restrained from further prosecuting the suit then pending in the New York supreme court, on the ground that if it was permitted to proceed with said suit before the policy was so reformed as to set out the true agreement of the parties, a judgment would necessarily go against the appellant.

A preliminary injunction having been ordered, pursuant to the prayer of the bill, the potteries company filed its answer, setting up, among other things, that, under the law of the State of New York, the title company was entitled to all the relief and remedies as defendant in the action brought against it in the New York court that it sought to obtain by the bill filed by it in the court of chancery. This allegation in the answer was verified by the affidavit of a New York counsel, learned in the law of that state, who testified

"that the defendant in the New York action is entitled, under the New York law, to all the relief and remedies, as defendant in that action, that it could obtain or has prayed for as complainant in its New Jersey suit. The formal distinction between law and equity having been abolished in this state [New York], the defendant in an action at law here is entitled to plead as many defences as he may have, whether they are legal or equitable, whether he pleads simply a defence or bar without asking affirmative relief, or whether he pleads new matter constituting a counterclaim or equitable set-off, or

recoupment or matter in the nature of a cross-bill under the old system, and asks affirmative relief. These rights and remedies are given to defendant by express legislative enactment, and have for many years been repeatedly recognized and enforced by all the courts in this state."

Upon the coming in of the answer and accompanying affidavits the preliminary injunction was dissolved, and from the order of dissolution this appeal is taken.

The respondent, having selected a court of the domicile of the appellant as the forum in which to try the matters in issue between them involved in the suit brought by it, is entitled to have those matters finally determined in that forum, provided the appellant can, in its defence in that suit, show the real agreement between the parties as fully as it would be permitted to do in its suit brought here for the reformation of the written contract. It was because of the allegation in its bill that it could not successfully defend in the New York court until there was an actual reformation of the policy of insurance, that the chancellor granted the injunction, and it was because of the denial of this allegation by the respondent, in its answer, supported by the affidavit of New York counsel, that the injunction was dissolved.

But it is said by the appellant that, admitting it to be true that the respondent is entitled to have the matters involved in the New York suit disposed of in the New York court, provided appellant can, in its defence in that suit, show the real agreement of the parties, there is nothing in the case as it stands before us to justify the conclusion that the statement of the answer in that regard is true. The argument in support of this contention is as follows: In the absence of proof to the contrary it will be presumed by the courts of this state that the common law is in force in the State of New York; that, by the rules of the common law, the appellant could not, in an action at law brought against it for breach of a written contract, show that by mistake of the parties the writing did not set forth the real agreement between them, and that the presumption that the common law prevails in New York is not overcome by the affidavit of the New York counsel annexed to the answer, for the reason that it

attempts to show that the rule in question has been abrogated by statute, and that the only legal method of proving the existence of a statute of a foreign state is not by the testimony of counsel of that state, but by the production of a duly-authenticated copy of the instrument itself.

While it is entirely true that in the absence of proof to the contrary the courts of New Jersey will presume that the common law prevails in a sister state, I cannot agree to the proposition that the *only* method of rebutting this presumption is the production of a copy of the statute which abrogates the common-law rule, the existence of which is challenged. Mr. Taylor, in his work on evidence (volume 2, section 1423), in dealing with this question says:

" In conformity with the general rule which admits in evidence the opinions of skilled witnesses on all subjects of science, the existence and meaning of the laws, as well written as unwritten, of foreign states may be proved by calling professional persons to give their opinions on the subject."

That this is the correct rule seems to me to be plain, both on principle and on authority. In order to know what the law of a foreign state is on a given subject we need something more than the production of the statute, for that only gives the words in which the law is written. The question to be determined is not what the language of the law is, but what the law is altogether, as shown by exposition, interpretation and adjudication ; and this, I take it, can best be ascertained by the testimony of a professional witness, whose special knowledge enables him to speak to that fact.

Lord Langdale, in the well-considered case of *Nelson* v. *Lord Bridport, 8 Beav. 535*, uses the following language in discussing this subject: " The foreign law and its application, like any other results of knowledge and experience in matters of which no knowledge is imputed to the judge, must be proved, as facts are proved by appropriate evidence—*i. e.*, by properly qualified witnesses who can state from their own knowledge and experience, gained by study and practice, not only what are the words in which the law is expressed, but also what is the proper inter-

pretation of those words, and the legal meaning and effect of them as applied to the case in question."

Mr. Justice Coleridge, in *Baron De Bode's Case, 8 Q. B. 265*, considering the same questions, says : " What in truth is it that we ask the witness ? Not to tell us what the written law states, but, generally, what the law is. The question is not as to the language of the written law, for when that language is before us we have no means by which to construe it. How many errors might result if a foreign court attempted to collect the law from the language of some of our statutes which declare instruments in particular cases to be ' null and void to all intents and purposes,' while an English lawyer would state that they were good against the grantor, and that the courts have so expounded the statutes. It is no answer to say that other evidence by word of mouth may be added for the purpose of giving the interpretation of the written law. I am merely showing that our courts require, not the actual written words of a foreign law, but the law itself, for which purpose a professional witness is required to expound it."

Lord Denman, in the case last cited, says : " It is objected that this [*i. e.*, permitting a professional witness to testify concerning the written law] is a violation of the general principle that the contents of a written instrument can be shown only by producing the instrument or accounting for its non-production. But there is another general rule : that the opinions of persons of science must be received as to the facts of their science. That rule applies to the evidence of legal men ; and I think it is not confined to unwritten law, but extends also to the written laws which such men are bound to know. Properly speaking, the nature of such evidence is not to set forth the contents of the written law, but its effect, and the state of law resulting from it. The mere contents, indeed, might often mislead persons not familiar with the particular system of law. The witness is called upon to state what law does result from the instrument."

Shortly after the decision of *Baron De Bode's Case*, in the queen's bench, the house of lords, in the *Sussex Peerage Case, 11 Cl. & F. 114*, adopted the rule laid down by Lord Langdale

in *Nelson* v. *Lord Bridport,* and by the judges of the queen's bench in *Baron De Bode's Case,* and held that the existence and meaning of written as well as unwritten laws of a foreign state could be proved by calling professional witnesses to give their opinion on the subject.

The reasoning of the distinguished jurists from whose opinions I have quoted seems to me to be unanswerable. But we are told that the common-law rule established in England has no place in the jurisprudence of this country, because (as it is said) the federal constitution, supplemented by the act of congress of May 26th, 1790, provides the *exclusive* method of proving an act of the legislature of a sister state. The constitutional provision invoked is found in article 4, section 1 of that instrument, and provides that congress may, by general laws, prescribe the manner in which the public acts of a state shall be proved; and the act of congress of 1790, passed in pursuance of this provision, declares "that the acts of the legislature of any state or territory shall be authenticated by having the seals of such state or territory affixed thereto." *Rev. Stat. U. S. ch. 17 § 905.*

Conceding that, by virtue of the constitutional provision referred to, congress has power to fix an *exclusive* method for proving the public acts of the various states, it does not seem to me that they have done so by the act of 1790. Prior to the passage of that act, and notwithstanding the existence of the constitutional provision, the only method of proving the written law of another state was that pointed out by the common law. By the act of 1790 congress provided another method by which this could be done, namely, by the production of a copy of the act sought to be proved, duly authenticated by having the seal of the state affixed; but surely, if it had been intended to abolish the common-law rule and substitute another in its place, rather than to provide an additional method for proving the statutes of the several states, very different language would have been used—words which would have at least suggested the idea that such an intent existed.

That it has not been supposed, either by the bench or the bar of this state, that the act of congress of 1790 provided the *only* mode of proving the written law of our sister states, is shown

by the inveterate practice of the past half century. On March 2d, 1847, our legislature enacted " that the printed statute-books and pamphlet session laws of any of the United States, printed and published by the direction or authority of such state, shall be received as evidence of the public laws of such state in any court of this state" (*Gen. Stat. p. 1401 § 22*), and ever since the enactment of that statute the ordinary method of proving in our courts the statutes of other states has been the method provided thereby ; and yet, if it be true that congress, in pursuance of the authority vested in it by the federal constitution, has prescribed the *only* manner in which the public acts of a state can be proved, our statute of 1847 is a nullity, and the mode of proof which has so long prevailed in our courts is altogether irregular and illegal.

Even if I had doubts on the subject, I should be unwilling, in view of the long-established practice in our courts to which I have adverted, to say that congress had, by the statute of 1790, provided the *only* method of proving the written law of a sister state, and had abolished the common-law rule which had theretofore existed. But, as I have already said, in my view the statute referred to merely provided an additional method of proof, and did not abrogate the common-law rule.

The conclusion reached is that the chancellor was clearly right in considering that the affidavit of the New York counsel, annexed to the answer in this case, was competent evidence to show the state of the law in New York on the right of a defendant, in an action at law, to prove that the written contract sued upon did not, by reason of mistake of the parties, show the real agreement between them, and further, to prove what the real agreement was. This being so, there was no error in his ordering the injunction to be dissolved.

The order of dissolution is affirmed, with costs to the respondents.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, GARRISON, GUMMERE, LUDLOW, VAN SYCKEL, BOGERT, HENDRICKSON, NIXON—9.

*For reversal*—LIPPINCOTT—1.