THE CHESAPEAKE & OHIO NORTHERN RAILWAY
CO. *v.* BARGER ET AL.

*Railroads — Appropriation of land — Proof of resolution by direct-
ors unnecessary, when — Foreign corporations — Facts to be
proven — How foreign laws proven — Section 905, U. S. Revised
Statutes — Section 11498, General Code — Organization of rail-
road by officers of another road.*

1. In the trial of an action by a foreign railroad company to appro-
   priate private property for railroad purposes in this state, it must
   prove its *de jure* existence according to the law of the state
   where organized.
2. Section 8759, General Code, expressly confers upon a foreign cor-
   poration which owns and operates a railroad the right of eminent
   domain in this state, and hence in such action it is not necessary
   to prove that the laws of the state in which such corporation
   was organized confer upon it such right.
3. The legislative acts of a sister state may be proved in the courts
   of this state as provided by either Section 905, Revised Statutes
   of the United States, or Section 11498, General Code of Ohio.

4. Officers or employes of one railroad company may legally organize another for the benefit of the former, if they, acting for themselves as individuals, subscribe and pay for their stock, elect directors and comply with the forms of law in perfecting the organization.

5. In the trial of an action by a railroad company to appropriate property for its right of way, it is not necessary to show that its directors have by resolution declared it necessary to appropriate the land described in the petition.

(Decided January 9, 1919.)

ERROR:    Court of Appeals for Pike county.

*Messrs. Bannon & Bannon* and *Mr. Levi B. Moore,* for plaintiff in error.

*Mr. C. E. Blanchard; Mr. Robert J. Odell* and *Mr. G. W. Rittenour,* for defendants in error.

This was an action to appropriate private property for right of way of plaintiff—averred to be a corporation organized under the laws of Kentucky—in constructing a railroad from Edgington, Kentucky, to Waverly, Ohio. The original judgment of the probate court in favor of the plaintiff was affirmed by the court of common pleas, reversed by this court, and the cause remanded to the court of common pleas for a new trial. The court of common pleas then found against the plaintiff, and a petition and cross-petition in error have been filed in this court to reverse the finding and judgment of the court of common pleas.

SAYRE, J. This court is called upon to determine the following questions:

When in a proceeding by a railroad company to appropriate land for a right of way the court of

common pleas affirms the probate court, and both judgments are reversed by this court, shall the cause be remanded to the probate court or to the court of common pleas for a new trial?

Is it necessary for the plaintiff to prove its incorporation according to the laws of Kentucky, and that the power of eminent domain has been conferred upon it by such laws?

Must such proof be offered as is required by Section 11498, General Code?

Is the plaintiff a dummy corporation?

Is it necessary for the plaintiff to prove that its board of directors, prior to the filing of the petition, passed a resolution declaring that it was necessary to appropriate the premises described in the petition?

Was evidence offered to show that the plaintiff was unable to agree with Keziah D. Barger?

I. The judgment of the probate court in the original action was affirmed by the court of common pleas, and, upon reversal of both judgments by this court, the cause was remanded to the court of common pleas for a new trial. The case has been retried in the court of common pleas and is here upon a proceeding in error, and defendants in error are, by cross-petition in error, challenging the former ruling of this court in remanding the cause to the court of common pleas for a new trial.

While this court is of the opinion that the legislature intended that a new trial should be held in the court of common pleas, whether that court affirms or reverses the probate court, yet from the report of the case *The Pittsburgh, Cleveland & Toledo Rd. Co.* v. *Tod,* 72 Ohio St., 156, and of

the case *The Parkside Cemetery Assn.* v. *The Cleveland, Bedford & Geauga Lake Traction Co.,* 93 Ohio St., 161-182, we have concluded that the supreme court holds otherwise; and believing that if the question was presented again to that court it would stand by its former action we have decided to remand the case to the probate court for a new trial.

II. It is necessary for the plaintiff to prove its incorporation according to law. (*Cemetery Assn.* v. *Traction Co., supra.*) And whether it is incorporated according to law is to be determined by the law of the state where it is organized. (*American Ball Bearing Co.* v. *Adams,* 222 Fed. Rep., 967.)

It is contended that by a recent amendment of Section 8759, General Code (106 Ohio Laws, 347), the power of eminent domain is expressly conferred on foreign corporations owning and operating a railroad. That section as amended reads in part as follows:

"A company, domestic or foreign, or municipal corporation which owns or operates a railroad may enter upon any land for the purpose of examining and surveying its railroad line, and appropriate so much thereof as is deemed necessary for its railroad."

This seems to us to be a clear grant of the right of eminent domain to a foreign corporation which owns and operates a railroad. This right being granted by our statutes to a company organized under the laws of Kentucky, it was not necessary to prove the right of eminent domain conferred upon plaintiff by Kentucky laws, because there was proof

offered that the plaintiff owned the railroad constructed by it from Edgington to Waverly.

III. Oral evidence was admitted to show that Carroll's Kentucky Statutes (1915), the 1916 Kentucky Acts of Legislature, and the 1917 Kentucky Acts of Legislature, contain all the general statutory law of the state of Kentucky, and these volumes were produced in court. The sections of the statutes which authorize the association of persons to form corporations for the purpose of constructing and operating railroads are found in Carroll's Statutes. There was no evidence that these were published by the authority of the state of Kentucky as required by Section 11498, General Code of Ohio, nor do they purport to be published by the authority of the state of Kentucky. However, the sections of the statutes referred to, typewritten and certified to by the secretary of state of the commonwealth of Kentucky, to which was affixed the seal of that commonwealth, were admitted in evidence.

Section 905, Revised Statutes of the United States, provides that:

"The acts of the legislature of any State * * * shall be authenticated by having the seals of such State * * * affixed thereto." (Section 1519, U. S. Comp. Stat.; 1 Stat. at Large, 122.)

The federal statute does not provide an exclusive method for proving legislative acts of a sister state, but if proof is made in accordance with its provisions such proof is sufficient. *Title Guarantee & Trust Co.* v. *Trenton Potteries Co.,* 56 N. J. Eq., 441, 38 Atl. Rep., 422; *Ridpath* v. *Heller,* 46 Mont., 586, 129 Pac. Rep., 1054, and *Hewitt* v. *Bank of*

*Indian Territory,* 64 Neb., 463, 92 N. W. Rep., 741.

We understand the law to be that if proof is made in accordance with either the federal or Ohio statute no more is required.

IV. Is plaintiff a dummy corporation?

The record discloses the following facts:

1. In order to carry freight, principally coal, from The Chesapeake & Ohio Railway Company, in Kentucky, to The Hocking Valley Railway Company, now controlled by the Chesapeake & Ohio, it was important to the former to have a railroad constructed from Edgington, Kentucky, to Valley Crossing, near Columbus, Ohio, and the plaintiff, The Chesapeake & Ohio Northern Railway Company, was organized for that purpose.

Mr. M. J. Caples, elected president of the plaintiff at the first meeting of directors, testified as follows:

"Q. How does it happen that these men that are directors of the C. & O. Railway all became directors of the C. & O. Northern? A. Because the Chesapeake & Ohio Northern is a subsidiary of the Chesapeake & Ohio; was intended, was built principally for the purpose of handling the business of the Chesapeake & Ohio.

"Q. So that the C. & O. desired to have complete control of the management of the C. & O. Northern? A. Yes * * * .

"Q. Why didn't the C. & O. build it under its own name? A. Because the C. & O. had no right to do business in Ohio at that time, and it is much easier to organize a new corporation to build such property than to extend the operation of another

one. It was a matter of convenience. We discussed this matter quite fully with the Public Utilities Commission of Ohio as to how we might organize for the purpose in it. This road was built with the idea of improving the transportation facilities of the C. & O. Nothing to conceal about it. We want everything known that we know ourselves * * *.

"Q. And the Chesapeake & Ohio Railway financed the Chesapeake & Ohio Northern all the way through, has it not? A. Yes, except a few shares purchased by the individual share holders.

"Q. Those shares purchased by the individual share holders were for the mere purpose of qualifying them as officers, were they not? A. Yes."

2. The incorporators, original stockholders and directors were officers or employes of the Chesapeake & Ohio.

3. The Chesapeake & Ohio Northern was organized with a capital stock of fifty thousand dollars, divided into shares of the par value of one hundred dollars each.

4. Six of the original stockholders subscribed and paid for three shares each, and one subscribed and paid for two hundred and thirty-two shares of the capital stock.

5. The alleged incorporation was completed in May, 1914. The first meeting of directors was on May 29, 1914.

6. July 23, 1914, the capital stock was increased fifty thousand dollars. October 2, 1915, the capital stock was increased to three million five hundred thousand dollars.

· 7. This suit was commenced January 24, 1916. In July, 1918, The Chesapeake & Ohio Railroad Company owned all the stock of the plaintiff company except twenty-one shares owned by five individuals, of whom two were of the seven original stockholders.

In *Cemetery Assn.* v. *Traction Co., supra,* it appears that the party seeking to appropriate the land never kept any books of account or bank books, or certificate books; that while one director paid in the ten per cent. of the authorized capital stock there was no record of it; and that the other directors never paid for their stock at all. It did further appear in that case that The Cleveland, Bedford & Geauga Lake Traction Company was the creature of The Northern Ohio Traction & Light Company. In *American Ball Bearing Co.* v. *Adams,* 222 Fed. Rep., 967, no money whatever was paid by any of the incorporators, but the ten per cent. of the authorized capital stock was paid by one of the three companies for whose benefit the dummy corporation in that case was attempted to be organized. Consideration of these two cases leads fairly to the conclusion that whether an organization may be adjudged a dummy corporation or not depends upon whether the original incorporators and stockholders, excepting the case of a proper gift of stock, subscribed and paid for their stock and were interested to the extent of the amount of such stock in the fortunes of the organization. If they are so interested; it is of no consequence how much more they may be interested in some other organization. There is no Ohio law, at least, which prevents officers and employes of

one corporation from organizing another, although for the benefit of the former, if they subscribe and pay for the stock of the latter, and thus become interested in good faith in it. Besides, by virtue of Section 8806, General Code, "A company may aid another in the construction of its road, by means of subscription to its capital stock, or otherwise, for the purpose of forming a connection of the roads of the companies, if the road of the company so aided will not when constructed form a competing line."

The evidence shows that the two roads referred to in this case will not be competing lines.

By the provisions of this section one company may purchase substantially all the capital stock of another and absolutely dominate it, and, as this may be purchased at any time, the condition of things which appeared on the trial of this case, to-wit, an effort to appropriate land by one corporation whose stock was almost entirely owned by another, did not deprive the appropriating corporation of its right of eminent domain, since its incorporation was effected in good faith and in accordance with the forms of law. The plaintiff has never been a dummy corporation, as it seems to us.

V. Objection was made to the proof of the minutes of the plaintiff showing the meetings of incorporators, directors and stockholders. It is contended that they are not sufficiently identified.

Mr. Caples, who signed the minutes as chairman, identified the book as the minute book of the plaintiff company, and testified that he was present at all the meetings. The assistant secretary of the

company testified that the book offered in evidence was the minute book of the company, and that he was the custodian of the same although he did not prepare any of the minutes. The fact that the minutes were authenticated by an officer whose duty it was to sign them and the book was identified as the record of the corporation by its custodian is sufficient proof of the book and its contents.

VI. The former opinion of this court holding that the plaintiff must show that its directors have declared by resolution that it was necessary to appropriate the land described in the petition is erroneous. The statute has not conferred the power to determine the necessity for the appropriation upon the corporation seeking to appropriate the land for railroad purposes, but upon a court. The issue before the probate court is whether there is a necessity for the appropriation, and if the resolution of the plaintiff's board of directors is introduced in evidence it must be to prove that issue. Such resolution, if introduced in evidence, would express the opinion of a certain number of individuals that it was necessary to appropriate the premises described in the petition. This opinion of the directors would be fatally defective as evidence upon the issue as to whether or not it was necessary to the plaintiff to make the desired appropriation. The question for the probate court is not whether in the opinion of the plaintiff's directors the appropriation is necessary, but whether it is necessary. This is a question to be determined by evidence, as in other cases, with the burden of proof on the plaintiff. Suppose the defendant was

a railroad company and offered a resolution of its board of directors stating that there was no necessity for the appropriation, certainly no one would contend that such resolution would be admissible. And yet no one can point out any difference as to the probative value on the issue of necessity between such resolution and one passed by the board of directors of the plaintiff.

The question of necessity is a judicial one for the probate court and only such proof as is admissible under the rules of evidence can be received on such issue, and a resolution by the board of directors of the plaintiff company declaring the appropriation of the property in question a necessity is no evidence whatever of such necessity. *Kountze* v. *Morris Aqueduct,* 58 N. J. L., 303.

VII. There is no evidence in the record to show that the plaintiff was unable to agree with defendant Keziah D. Barger, although it appears that she is the wife of John W. Barger, with whom the evidence shows inability to agree. The mere fact that they are husband and wife is not sufficient to show that the husband had authority to act for his wife in the matter. The statute requires plaintiff to show inability to agree with the owner, and, if there is more than one owner, then proof must be offered of inability to agree with the owners.

The judgment will be reversed and the cause remanded to the probate court for a new trial.

*Judgment reversed.*

HOUCK and WALTERS, JJ., concur.

(HOUCK, J., of the Fifth Appellate District, sitting by designation in the place of MIDDLETON, J., of the Fourth Appellate District.)