Bellows *v.* Adm'r of Allen.

HIRAM BELLOWS *v.* Administrator of GEORGE A. ALLEN.

Under the Revised Statutes, chap. 48, sec. 10, which provides, that "actions of trespass and trespass on the case, for damages done to real or personal estate," shall survive, an action of trespass on the case against a sheriff, for the default of his deputy, in not paying to the plaintiff money collected by the deputy upon an execution in favor of the plaintiff against a third person, will survive.*

The case of *Adm'r of Barrett* v. *Copeland*, 20 Vt. 244, considered and explained.

TRESPASS ON THE CASE, brought against the defendant Allen, in his life time, as sheriff of the county of Chittenden, for the default of his deputy in not paying to the plaintiff money collected and received by the deputy upon an execution in favor of the plaintiff against one Nichols and others. Allen died while this suit was pending, and his administrator moved to dismiss the suit, upon the ground that the cause of action did not survive. It appearing, that the money collected by the deputy, had never in fact been received by Allen, the county court, September Term, 1848,— BENNETT, J., presiding,—dismissed the suit. Exceptions by plaintiff.

*C. D. Kasson* for plaintiff.

Admitting that the decision of this court in *Adm'r of Barrett* v. *Copeland*, 20 Vt. 244, is correct, in holding that the statute, which allows all actions of trespass, or case, " for damages done to real or personal estate," to survive, is limited to damages done to some " specific property," still we insist, that this case is clearly within that rule. The court, in that case, use the word "*property*," instead of *estate*, as the *thing*, to which the damage must be done *specifically*. Doubtless the three words, *estate, property* and *thing*, are to a certain extent convertible terms. Strictly, however, the word *estate* signifies the *interest, which a man hath in a thing*. And in this sense we claim the legislature should be taken as having used it. The word *property* is used indifferently, to signify either the *thing*, or the *estate*, or *interest*, a man has in the thing. The word, therefore, as used by the court, cannot be supposed to limit

* See *Dana, Adm'r*, v. *Lull*, 21 Vt. 383.

the signification of the word *estate*. Every *thing*, therefore, which is the subject of *property*, or in which a man can have a *pecuniary interest*, may be regarded as *estate*, or *property*. Hence the elementary writers predicate *estate*, or *property*, of *things*,—things real and personal,—things personal *in possession*, or *in action*. Among the *things in action* are notes, bills, bonds, *judgments*, &c., each and all whereof are the subject matter of a man's *estate*, and in many cases constitute the entire *estate*, whereof he dies seized.

The plaintiff had an interest and estate in the judgment and execution against Nichols; it was a specific chattel, or thing, or piece of property, in action, before it was collected; and by the act of collection by the sheriff either the money became his, *eo nomine*, or identically, and in either case it must be property, or it gave him a new *right in action*, substantially and equitably as a debt against the sheriff; or else the original judgment, or "right in action," had been, *by the wrongful* act of the sheriff, (inasmuch as the debt was so far destroyed,) injured and *damaged* to the amount of the money collected thereon.

*J. Maeck* for defendant.

1. At common law torts died with the person, and no action could be sustained against the administrator, where the plea must be not guilty. Com. Dig., Administration B. 15. *Hambly* v. *Trott*, Cowp. 371. 1 Saund. R. 216 *a.*

2. Although cases may be found, where testator's, or intestate's, estates have been charged for torts committed by them in their life time, as where they have converted the property of others and received the money for it on sale, yet the action cannot be maintained against their representatives, if framed in tort. It must be assumpsit, or debt. Cowp. 371. 9 Petersd. Abr. 342. *Wheatly* v. *Lane*, 1 Saund. R. 216, n. 1. 3 T. R. 549.

3. The action does not survive by the statute. Rev. St. 269. *Adm'r of Barrett* v. *Copeland*, 20 Vt. 244. *Read* v. *Hatch*, 19 Pick. 47.

The opinion of the court was delivered by

HALL, J. If the plaintiff has any effectual remedy for the default of the deputy, it must be against the estate of the sheriff; for by the

Bellows *v.* Adm'r of Allen.

provisions of the statute no action can be maintained against the deputy, for his official misconduct,—the remedy for his defaults being against the sheriff only. For the default of the deputy, in not paying over the money collected on the plaintiff's execution, there can be no doubt the sheriff, in his life time, would have been liable. Whether the cause of action survives against his administrator must be determined by the provisions of the Revised Statutes.

Section 10 of chapter 48 declares, that, " in addition to the actions which survive by the common law the following shall survive and may be commenced and prosecuted by the executor, or administrator, that is to say, actions of ejectment, or other proper actions to recover the seisin and possession of lands, actions of replevin and trover, and *actions of trespass and trespass on the case for damages done to real and personal estate.*" The twelfth section of the same chapter makes the remedies by and against executors and administrators reciprocal, so that any cause of action, which would survive in favor of an executor, or administrator, is declared to survive against him. If the administrator of the plaintiff, in this case, could maintain the action against the sheriff, while in life, for this default, then the administrator of the sheriff must be held liable.

I entertain no doubt, that the cause of action in this case would have survived to the administrator of the plaintiff. The last clause of the tenth section of the statute before recited gives to executors and administrators the actions of " trespass and trespass on the case for damages done to real or personal estate." The word *personal,* in this clause, is contrasted with the word *real,* and the term *personal estate,* in the connection in which it is used, must be understood to embrace every species of property not of a freehold nature, including not only goods and chattels, but rights and credits also. Such is the ordinary legal signification of the term. In that sense the words *personal estate* are generally, if not universally, used throughout the Revised Statutes. Thus the statute provides in one section, that real estate may be disposed of by will, and in another that *personal estate* may be disposed of in the same manner; nuncupative wills of *personal estate* are allowed; a soldier may by such will dispose of his *wages,* or other *personal estate;* the *personal estate* of an intestate is first made chargeable with his debts, and when the *personal estate* is found insufficient, real estate is to be

sold for their payment. In all these and numerous other instances, which might be mentioned, the words personal estate are evidently used to embrace every description of property, not coming under the denomination of real estate. And I apprehend there can be no doubt whatever, that the legislature, in passing the statute giving the actions of trespass and trespass on the case for damages done to personal estate, intended to furnish a remedy for injuries done to to the rights and credits of a testator, or intestate, as well as to his specific goods and chattels.

The value of a debt due, as well as of a tangible article of property, may be impaired, or destroyed, by the act or neglect of another; and the owner of such debt would suffer damage thereby, for which he might always have had a remedy by action. The framers of the statute intended such remedy should survive to the representative of him, who had suffered the damage. If the plaintiff's administrator were now suing for the sheriff's default, the action would be one of that description. The act of the defendant, by his deputy, in collecting the money in discharge of the plaintiff's debt and neglecting to pay it over, is a plain and manifest damage to the plaintiff's personal estate, the remedy for which would survive to his administrator by the statute; and surviving to him, it would consequently survive against the estate of the defendant, who committed the injury.

It is insisted by the counsel for the defendant, that the case of the *Adm'r of Barrett* v. *Copeland,* 20 Vt. 244, is an authority against the survivorship of this action. But if the facts of that case are carefully examined, it will be found to have little or no analogy to the present case. The facts were these ;—Copeland, the defendant in that suit, was constable of Middletown, in Rutland county, and having an execution in his hands against Barrett, he returned upon it, that he had arrested Barrett at Middletown, that Barrett escaped and fled, and that on fresh pursuit he re-took him at Bennington. Barrett brought his action for an assault committed at Bennington, and, on trial, Copeland introduced his execution and return, which the county court held to be conclusive evidence in his favor, and he obtained a verdict, which was, however, set aside by the supreme court. 18 Vt. 67. Before a final trial Barrett died and the suit abated. The administrator of Barrett then brought his action

Bellows *v.* Adm'r of Allen.

against Copeland for a false return, alleging, as the ground of injury, that, by Copeland's use of his false return in the action of assault and battery, the intestate had been defeated in that action, and had thereby been put to expense and damage.

It is plain, that there is a very broad distinction between that case and the present. Barrett was not the creditor in the execution, upon which the return was made. He had no debt in the charge of Copeland, which was or could be impaired, or lost, by his misconduct. The assault at Bennington was a mere wrong to the person of Barrett; and the injury to him by the use of the return in court, in regard to it, was of the same character. The right of action, which was impaired by the introduction of the return in evidence, was not a debt due to Barrett, and did not constitute any part of his personal estate. It was but a right of action for a personal wrong, which died with the person; and it is not perceived, how an injury to such a right of action could be held to be a damage done to personal estate.

We are all agreed, that *Barrett* v. *Copeland* is no authority against the survivorship of the present action, and that it does survive against the estate of the intestate.

Having been present at the hearing of *Barrett* v. *Copeland*, I wish to say a few words farther in regard to that case. I concurred in the decision, without reference to any supposed distinction, applicable to that case, between our statute and that of 4 Edward III. I thought that action did not survive under the English statute, and I think so now. If it had been an action by the administrator of the creditor in an execution against a constable, or a sheriff, for a false return, by which the debt had been lost, or impaired, I should have had no doubt, it would have survived under either statute. But being, as I conceived, a false return, which worked a mere personal wrong, I thought an action for it died with the person, both in England and in this state. I was then inclined, as I am more strongly now, on farther consideration, to give our statute, so far as it regards the survivorship of actions in favor of executors and administrators for injuries to personal estate, the same construction, that has been given to the English statute. I think the language of our statute naturally requires and demands the same construction. Indeed, the approved test, for determining that an action

survives under the English statute, is the application to it of almost the very words of our statute.

The note of Sergeant Williams to *Wheatley* v. *Lane*, 1 Saund. R. 216, *a*, has been considered a most clear and accurate exposition of the English law in regard to the survivorship of actions. It has been approved and substantially copied by Mr. Chitty and other subsequent elementary writers on that subject. In that note Mr. Williams speaks of the statute of 4 Edward III, chapter 7, as follows ;—" By an equitable construction of the statute, an executor shall now have the *same actions*, for any injury *done* to the *personal estate* of the testator, in his life time, whereby it is become less beneficial to the executor, as the testator himself might have had, whatever the form of the action may be. So that he may now have trespass, or trover, action for a false return, for an escape, debt on a judgment against an executor, suggesting a devastavit, action for removing goods taken in execution before the testator (the landlord) was paid a year's rent, and other actions of the like kind, for *injuries done to the personal estate* of the testator in his life time."

The rule for determining the question of survivorship is thus twice stated by Mr. Williams to be, whether an *injury has been done to the personal estate* of the deceased. Our statute is a copy of this rule, except that for the word *injury* the equivalent word *damage* is substituted,—the statute declaring, that actions *for damages done to personal estate* shall survive. I do not perceive, how more apt and appropriate words to make our statute identical in construction with the English statute, could have been *drawn*, than those which are used, and I am therefore of opinion, that there is no ground whatever for *saying*, that there are any causes of action, which would survive under the English statute, that should not survive under ours.

The judgment of the county court, dismissing the suit, is reversed, and the suit remanded to that court for farther proceedings.