HENRY REYNOLDS, Administrator with the will annexed of JAMES REYNOLDS, *vs.* JOHN B. HENNESSY.

Damage to an interest by way of lien or security in property is a damage to personal estate within the meaning of the statute 4 Edw. III. cap. 7.

Damage by a wrongful act to something recognized as personal estate gives rise to an action which survives both for and against an executor or administrator under Pub. Stat. R. I. cap. 204, § 8.

A declaration charged that the defendant as mortgagee sold the mortgaged estate under the mortgage powers for a sum in excess of the mortgage debt, conveyed to the purchaser for only the amount of the mortgage debt, fraudulently concealed from the owner of the equity of redemption the fact of the excess, and never accounted therefor; that the purchaser conveyed to a *bonâ fide* purchaser for value without notice, and became insolvent, whereby the excess was lost to the owner of the equity.

*Held,* that, from the facts charged, the owner of the equity of redemption lost his vendor's lien through the mortgagee's tort.

*Held,* further, that from the facts charged arose a right of action which the administrator of the owner of the equity of redemption could enforce against the administrator of the mortgagee.

*Held,* further, that the injury to the vendor's lien was a damage to estate which gave a right of action surviving the death of plaintiff or defendant under Pub. Stat. R. I. cap. 204, § 8.

Pending a bill in equity and an action at law, the plaintiff was required by the court to make election between his remedies. He thereupon discontinued the action at law and proceeded with his bill, which was subsequently dismissed by the court "without prejudice."

*Held,* that neither the discontinuance nor the dismissal "without prejudice" precluded the plaintiff from a new action.

To an action at law the defendant pleaded the statute of limitations, to which the plaintiff replied, alleging fraudulent concealment by the defendant of the cause of action by means of false representations until within six years, etc.

*Held,* on demurrer, that the replication was good.

TRESPASS ON THE CASE. On demurrer to the declaration, and subsequently on demurrers to pleas and replication.

After the proceedings in this case already reported, 15 R. I. 513, the death of the defendant Hennessy was suggested at the April Term, 1888, and a citation was issued to his administrators to appear and defend. At the October Term, 1888, the plaintiff asked for a reargument of the demurrer to the declaration. After reargument the court affirmed its decision of March 19, 1887, 15 R. I. 513, 514. At the April Term, 1889, permission was given to the plaintiff to amend the declaration, and the defendants demurred to the amended declaration.

*August* 6, 1890. STINESS, J. The question brought before the

court on the demurrer of the administrators on the estate of the original defendant is, whether the causes of action set out in the first two counts of the amended declaration are such as survive under Pub. Stat. cap. 204, § 8.

The first count sets out in substance that the plaintiff's intestate, James Reynolds, was the owner of real estate mortgaged to the defendant, Hennessy, who has died since the commencement of this suit; that Hennessy sold the estate, under the power of sale in the mortgage, in May, 1872, in the lifetime of James Reynolds, to Patrick Reynolds, the highest bidder, for the sum of $4,950, a sum greatly in excess of the amount due under the mortgage, whereby it became the duty of Hennessy to deliver a deed of the estate for the full sum bid, and for no less sum; that Hennessy, under color of his right as mortgagee, executed and delivered a deed of said premises for the sum only of about the amount due on the mortgage, with the expenses of sale, and never accounted with said James Reynolds for the excess, or any part thereof; that in the lifetime of James Reynolds, before he had any knowledge of the facts, said Patrick sold to a *bonâ fide* purchaser; that said Patrick became insolvent, and unable to pay the balance of his bid; that so, by reason of Hennessy's wrongful conduct in conveying said estate for less than the bid, and his omission to account, the balance of the bid was wholly lost to said James in his lifetime.

The second count sets out the same general facts, and avers that Hennessy conveyed said premises to said Patrick with intent to enable said Patrick to acquire title to said premises in fee upon the payment only of what was due said Hennessy, and to defraud said James of the excess; and that he wrongfully concealed from said James the fact that he had so conveyed, but gave out that he had conveyed for the full sum bid by said Patrick, and had actually been paid said sum of $4,950; whereby, because of the sale to a *bonâ fide* purchaser and Patrick's insolvency, the equity of redemption became wholly barred and lost to said James.

When this case was before the court on the declaration as originally framed, 15 R. I. 513, it did not appear that Patrick Reynolds had transferred, and it was held that no cause of action was set forth, because it did not appear what the tort consisted of, nor how it affected an interest in the property; for, if the wrongful

conduct was simply the conveyance of the property under price, Patrick Reynolds being a party thereto, the conveyance was void beyond a transfer of the mortgage, and so James Reynolds had suffered no damage. Now the plaintiff sets out that Hennessy concealed the fact that he had conveyed the property for a less sum than the bid, and made false representations to the contrary, until after Patrick had sold it to a *bonâ fide* purchaser without notice.

The statute says: "In addition to the causes of action and actions which survive at common law the death of the plaintiff or defendant therein, the following causes of action or actions shall also survive: —

"*Third.* Causes of action and actions of trespass, and trespass on the case for damages to the person, or to real and personal estate." Pub. Stat. R. I. cap. 204, § 8.

The principal controversy under such statutes has been whether the damage must be to some specific property; and so, in cases where the damage was not immediate to such property, whether the action would survive. In *Aldrich v. Howard*, 8 R. I. 125, where the defendant maintained a stable on his premises which became a nuisance to the plaintiff's adjoining estate, used for a hotel, it was held that the statute provided not only for cases of trespass, where the injury is not only the direct but the immediate effect of a wrongful act forcibly done, but for actions of the case where the damages are not immediate, but, to be recoverable, must be the natural and necessary consequence of the wrongful act alleged. That case did not controvert the rule that there must be damage in one of these ways to some specific property, and the decision was based upon the fact that such damage appeared. The controlling question before us, therefore, is whether the declaration discloses such a cause of action. What is the case presented? Hennessy gave the deed without receiving the full amount of the purchase-money. James Reynolds, as owner of the property and holding the relation of a grantor, to whom the surplus over Hennessy's debt belonged, was entitled to a lien for the unpaid purchase-money. *Kent v. Gerhard*, 12 R. I. 92. This was a valuable security, which might have been enforced while the title was in Patrick Reynolds, had he known that the whole amount had not been paid; but, being deceived by false representations on the part

of Hennessy, until after the estate had passed from Patrick Reynolds to a *bonâ fide* purchaser without notice, he thereby lost his lien and security for the surplus to which he was entitled. Here, then, is a tort coupled with damage to personal estate, if the lien or security is to be regarded as such within the meaning of the statute. Under the statute 4 Edw. III. cap. 7, it was held that if a sheriff suffers a person in his custody to escape, the executor of the party at whose suit he was in custody might maintain an action against him, because, the body of the prisoner being a pledge for the debt, the executor might be otherwise without any remedy; which is an injury to the goods. So, where to a *fieri facias* the sheriff made a false return that he had levied so much, when in truth he had levied more, the executor could sue; for, by levying on the goods, a right was vested in the testator. Bacon Abridg. *98; 2 Williams on Executors, *791, *792, and cases cited. In *Paine* v. *Ulmer*, 7 Mass. 317, an action against a sheriff, for the default of his deputy in not returning an execution, was held to survive to the administrator of the judgment creditor. *Dana* v. *Lull*, 21 Vt. 383, was an action of trespass on the case against a sheriff for the default of his deputy in not keeping property attached. It was held that, under a statute similar to ours, the action survived, because, as the plaintiff's intestate, by the attachment, had an inchoate right or lien on the property, which the officer would hold in the right of the creditor and for his benefit, there was so far a damage to the personal estate of the plaintiff as to bring it entirely within the spirit if not within the very letter of the statute. *Bellows* v. *Admr. of Allen*, 22 Vt. 108, went farther than this in holding that the action of trespass on the case survived against the executors of a sheriff for the default of his deputy in not paying over money collected on an execution in favor of the plaintiff against a third person.

We find no difference in opinion that damage to an interest in property, by way of lien or security, is a damage to personal estate within the meaning of the statute 4 Edw. III., and the similar statutes which have sprung from it; and where there is damage, by a wrongful act, attaching to something which is recognized as personal estate, the statute is plain that the action survives both for and against an executor or administrator. There has been

some diversity of decision upon the question whether it is enough to show damage to the rights and credits or a loss to the estate. For example, *Bellows* v. *Admr. of Allen*, 22 Vt. 108, holds that rights and credits are embraced in the term "personal estate;" while *Read* v. *Hatch*, 19 Pick. 47, and later cases in Massachusetts, hold that there must be damage to some specific property. See, also, 3 Williams on Executors, 6th Amer. ed. *793, Perkins's Notes, n. g. 1–4.

*Read* v. *Hatch* was an action for fraudulently recommending a trader as in good credit, whereby the plaintiff was induced to sell him goods on credit. There the tortious act did not relate to any specific property, but the damage was the indirect and remote result of it. *Henshaw* v. *Miller*, 17 How. U. S. 212, was a similar action, and it was held that the action did not survive. So, also, *Leggate* v. *Moulton*, 115 Mass. 552. Whether cases like these necessarily conflict with those which include rights and credits within the term "personal estate" we need not now consider; but we think it is clearly deducible from all the cases that, where there is simply a tort, not otherwise affecting the estate itself than by an indirect loss, an action *ex delicto* does not survive. *Winhall* v. *Sawyer's Estate*, 45 Vt. 466; *Aldrich* v. *Howard*, 8 R. I. 125; *Moies* v. *Sprague*, 9 R. I. 541. The difficulty, generally, is in drawing the line between tortious acts which must be held to damage one's personal estate and those which do not. Without attempting to define such a line in the present case, we think it sufficiently appears that James Reynolds had a lien on the property sold for the unpaid balance of the purchase-money; that he was deprived of this lien by the false representation that it had been paid, until the lien was lost by a transfer of the property. We therefore decide that this lien, being security for a debt, was personal estate, within the meaning of the statute, and consequently the tortious conduct alleged was damage to specific property, and not a mere tort which simply occasioned loss. In this view the declaration sets forth a good cause of action. The first count sets out the breach of duty by Hennessy in the sale of the estate, whereby the interest of James Reynolds therein as security for the surplus was lost; and the second count adds the averment of false representations. The essential elements of tort coupled

with damage to property appear in each. It is proper to add, however, that the second count contains the same averment in regard to concealment until after the cause of action had become barred by the statute of limitations, which was considered by the court on the former demurrer. Such a concealment affects a right of action simply, and not an interest in property. As a good cause of action is set forth in loss of lien in the property, and the count is not specially demurred to for duplicity, it is sufficient. We therefore overrule the demurrers to each count.     *Demurrers overruled.*

The defendant then filed special pleas in bar, to which the plaintiff demurred.

The defendant also pleaded the statute of limitations, to which the plaintiff replied, alleging a fraudulent concealment of the cause of action until within six years before the action was brought. To this replication the defendant demurred.

*December* 19, 1891. STINESS, J. To each count of the declaration the defendant pleads in bar that a prior action at law was brought by the plaintiff's intestate, and also a bill in equity, both of which suits involved the same cause of action which is the subject of this suit; that, upon the defendant's motion in the equity suit, the present plaintiff, having undertaken the prosecution of said suits as administrator, was required by order of the court to make an election whether he would proceed in his action at law or in his suit in equity, and thereupon, electing to proceed in equity, he discontinued his said action at law, and judgment was entered in favor of said defendant, Hennessy, for his costs; that, upon a hearing of the bill in equity, a decree was entered dismissing said bill, without prejudice to the right of the complainant, or those claiming under him, to prosecute the present action at law, which had then been commenced; that the judgment in the suit at law and the decree in equity are in full force and effect, and not reversed nor annulled.

The plaintiff demurs to the pleas, and the question is whether he is estopped, by the record of the election and judgments recited, from prosecuting the present suit.

This action is for damage to an interest in property caused by loss of the vendor's lien for the unpaid purchase-money, by reason of a fraudulent concealment on the part of Hennessy, the mort-

gagee, of the fact that the whole sum had not been paid. The previous action was to recover such unpaid balance, supposed to be in the hands of the defendant, as a sum due. These facts appear upon the record under the demurrer, and, although they show that the suits have arisen out of the same transaction, they also show that the causes of action are not identical. The defendant contends, however, that where one, having different remedies founded on the same transaction, makes an election, he is to choose one or the other, and is not entitled to choose them successively; hence, as the answer to the bill in equity disclosed the facts upon which this action is based, an election, after such disclosure, to proceed in equity was final. We do not think this is so.. Under the election, the remedy sought was in equity; but the result was not a determination of the merits of the controversy. Consequently the court dismissed the bill without prejudice to the right of the complainant to prosecute the present action at law, which had then been brought. The intention and effect of such a reservation in a decree are, by express terms, to prevent it from operating as a bar to another suit. A dismissal " without prejudice " leaves the parties as if no action had been instituted. *Magill* v. *Mercantile Trust Co.* 81 Ky. 129; *Lang's Heirs* v. *Waring*, 25 Ala. 625, 60 Amer. Decis. 533; *Durant* v. *Essex Company*, 7 Wall. 107, 109; *Ballentine* v. *Ballentine*, 15 Atlantic Reporter, 859. It has been held that such a reservation prevents the bar, even though it has been erroneously incorporated in the decree. *Wanzer* v. *Self*, 30 Ohio St. 378; *Gunn* v. *Peakes*, 30 North Western Reporter, 466. The decree in the equity suit, therefore, is no bar to this action, even though the facts upon which this action is based were before the court.

The only other question raised by the plea is, whether the judgment remaining in the previous action at law is a bar. A discontinuance of an action before a trial upon its merits is not an adjudication in the sense of a settlement of the controversy. In *Loeb* v. *Willis*, 100 N. Y. 231, Earl, J., says, p. 235: " By the discontinuance of an action, the further proceedings in the action are not only arrested, but what has been done therein is also annulled, so that the action is as if it had never been. If a suit be discontinued at any stage, or if the judgment rendered therein be set aside, or vacated, or reversed, then the adjudication therein

concludes no one, and it is not an estoppel or bar in any sense." See, also, *Muse* v. *Farmers' Bank of Virginia*, 27 Gratt. 252; *Gibson* v. *Gibson*, 20 Pa. St. 9. This is doubtless the reason for our statute, Pub. Stat. R. I. cap. 213, § 7, which debars the right of a plaintiff to discontinue a cause after it has been submitted to a jury, while in other cases the right to discontinue is not restricted. But if the voluntary discontinuance of an action does not operate as a bar to another suit, much less should an election required by a court, which is not the voluntary act of the plaintiff, operate as an estoppel. We think the proceedings recited in the special pleas are not a bar to this action, and the demurrers to the pleas must be sustained.

The defendant also pleads the statute of limitations, to which the plaintiff replies by alleging a fraudulent concealment of the cause of action, by false representations, until within six years next before the commencement of the action, and the defendant demurs to the replication.

The question, whether the fraudulent concealment of the existence of a cause of action will hinder the operation of the statute of limitations, is one which has been much discussed, and upon which there has been a radical difference of opinion.

On one side it is said that the statute, in plain terms, fixes the time when actions shall be brought, viz., within six years after the cause of action accrues; that the cause of action accrues when the act is done and the fraud is consummated, and from that time, and not from the time the plaintiff discovers it, the statute interposes as a protection; that while courts of equity may make an exception in cases of fraud, because of their peculiar jurisdiction, and because they are not strictly bound by the statute, yet for courts of law to do the same is to except from the law cases which are plainly within its terms.

On the other side it is said the statute must be expounded reasonably, so as to suppress and not to extend the mischiefs it was designed to cure; that it was intended to suppress fraud by preventing unjust claims from starting up after a great lapse of time, when evidence by which they might be repelled was forgotten, or had ceased to exist; that it should not, therefore, be so construed as to encourage fraud by enabling those who through falsehood or.

cheat have managed for six years to keep one in ignorance of the fact that he had a cause of action, to take advantage of their own wrong-doing under a plea of the statute.

We think the latter position is best sustained by reason and authority. It is certainly in the line of justice and morality, and the only objection to it is, that it introduces an exception into the statute. Even if this be admitted, it must be borne in mind that several such exceptions to the operation of the statute have already received a common consent, and have become established law; e. g. claims in favor of the government, on the ground that no time runs against the king; disabilities created by necessity or act of law; and the familiar case of a new promise.

The statute does not take away the debt, but simply affects the remedy, and these exceptions show how liberally the statute has always been treated as a remedial measure. But there is a wide distinction between engrafting an exception into a statute by construction, and construing it according to its obvious intent. The rule laid down by Blackstone of considering the old law, the mischief and the remedy, when applied to this statute shows that its purpose was to cut off those cases whose prosecution would or might result in fraud. It was clearly not intended to thwart the fundamental maxim that no one may take advantage of his own wrong.

Hence, if one by fraud conceals the fact of a right of action for six years, it is not engrafting an exception on the statute to say he is not protected thereby, but it is simply saying he never was within it, since the protection was never designed for such as he. But, whether this be taken as an exception or only as limitation of the statute, it rests upon sound reason and just policy. Such a construction also has been so frequently applied that it is now said to have the weight of authority in its favor, although it must be admitted there are strongly expressed opinions the other way. Buswell on Limitations, § 390; Angell on Limitations, 6th ed. cap. 18, § 186; 3 Parsons on Contracts, 99. The cases upon this subject have been so fully collated in text-books, and the decisions therein referred to, that it would be of little value now to recite them. In New York, Virginia, North Carolina, South Carolina, and New Jersey it is held that the replication of fraudulent con-

cealment in an action at law does not affect the bar of the statute. In Massachusetts, Maine, New Hampshire, Pennsylvania, Illinois, Indiana, and Texas the replication is held to be good.   There may be decisions in other States whose reports we have not examined. In England the leading case upon this point was *Bree* v. *Holbech*, Doug. 655, about which there has been much dispute whether the case contains a decision, or only a *dictum* of Lord Mansfield. Judge Story, in *Sherwood* v. *Sutton*, 5 Mason, 143, says, p. 149: " It is by no means a just representation of this case *to consider* this language as a mere *dictum* of Lord Mansfield.   He must be understood to have spoken in the name of the court ; and the leave granted to the plaintiff to amend, and reply fraud in the defendant, is proof that the court entertained no doubt upon the principal point.   If they had entertained any doubt, as there was an ample argument, why should it not have been expressed ?   This case has been often cited, both at law and in equity, since its decision, and the doctrine of Lord Mansfield has never been denied in England." Since the opinion of Judge Story, there have been at least two decisions which have been regarded to be contrary to *Bree* v. *Holbech*, viz., *Hunter* v. *Gibbons*, 1 H. & N. 459, and *Imperial Gas Light Co.* v. *London Gas Light Co.* 10 Exch. Rep. 39.   These cases, however, do not clearly show any fraudulent act of concealment, but only that the trespasses, being under ground, were concealed, and so not known to the plaintiff until within six years. But in the case of *Gibbs* v. *Guild*, L. R. 9 Q. B. Div. 59, in 1882, after the passage of the Judicature Act, by which the powers of courts of equity and law were blended, the replication of fraud was allowed by the court, Lord Coleridge remarking that the *dicta* of Mansfield, Holroyd, and Bailey at least made it questionable whether, if the cause had to be looked at as a pure common law action, the court might not have arrived at the same result.   The rule in equity that in cases of fraud the statute of limitations begins to run, not at the time the fraud is perpetrated, but from the time of its discovery, has already been followed in this State in *Peck* v. *The Bank of America*, 16 R. I. 710.   While the rule in actions at law cannot be maintained to this extent, there is no reason why equity and law should be so far apart as to forbid a court of law from taking the same starting-point when active additional fraud

has prevented such discovery. In the words of Parsons, C. J., in the leading case of this country, *First Massachusetts Turnpike Corporation* v. *Field*, 3 Mass. 201, 207: " If this knowledge is fraudulently concealed from the plaintiff by the defendant, we should violate a sound rule of law if we permitted the defendant to avail himself of his own fraud." We are therefore of opinion that the replications are good, and the demurrers must be overruled.

*Plaintiff's demurrers to defendant's special pleas in bar sustained. Defendant's demurrer to plaintiff's replication to the plea of the statute of limitations overruled.*