CHARLES L. FARRELL *vs.* THE EMPLOYERS LIABILITY
ASSURANCE CORPORATION, LTD.

FEBRUARY 24, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J. This is a suit in equity brought by Charles L. Farrell, a resident of Pawtucket, Rhode Island, to reach and apply, in satisfaction of a judgment obtained by the complainant in an action of the case against Adolphus J. Holmes, of North Attleboro, Massachusetts, certain money under a policy issued in Massachusetts by the respondent, a foreign insurance company, which insured Holmes for automobile liability. It was heard by a justice of the Superior Court upon bill, answer and evidence, whereupon a final decree was entered, ordering the respondent to pay to the complainant the amount of said judgment with interest from May 25, 1932. The cause is now before this court upon the respondent's appeal from this decree.

It appears that in April, 1930, the respondent issued to Mr. Holmes, the insured, a liability insurance policy covering his Pontiac automobile for the period commencing April 1, 1930, and ending December 31, 1930. The policy contained different kinds of insurance including extraterritorial coverage, for which an additional premium was paid. Holmes thereafter disposed of this automobile, pur-

chased an Oakland sedan, and applied to the respondent's agent in North Attleboro, for a transfer of said insurance to the Oakland. All the respondent's forms, required to transfer the insurance to cover the Oakland, were provided by the respondent's agent, signed by Holmes and delivered to the agent. A week or so later—on August 8, 1930—the Oakland automobile, while being driven by Holmes' son upon a public highway in Pawtucket, collided with a taxicab in which the complainant was a passenger. The complainant, in July, 1931, brought an action at law against Holmes for negligence, to recover for personal injuries received in this collision. The writ was served personally upon the defendant Holmes within this State. The respondent received regular notice of the accident and writ, and authorized its attorneys to enter appearance for the defendant Holmes, and they then took complete control of the investigation and defense of the case. Some misunderstanding between the insured and the company developed, resulting in the failure of the defendant to appear on April 28, 1932, the day set for trial. A continuance to May 16 was obtained by the respondent's attorneys, who then filed a motion for permission to withdraw from the case, assigning as the only reason therefor the lack of cooperation by the defendant insured. This motion was granted on condition that the defendant Holmes be notified of the withdrawal of the attorneys and of the new assignment date for trial. Notice of this motion and of the new trial date was served by the respondent upon defendant Holmes as ordered by the court, again the only reason given for the motion being his lack of coöperation; and, when the case was reached for trial on May 16, 1932, in the absence of Holmes, the motion of the respondent's attorneys to withdraw from the case was granted. The plaintiff then proceeded to obtain a judgment in this action against the defendant Holmes by default, in the amount of $4,006.35.

On June 9, 1932, the complainant brought an action of debt, based upon this judgment, against the respondent, in

accordance with the statute of this State governing like cases involving policies issued here. The respondent appeared through the same attorneys and contested the action. The case was tried, jury trial waived, before a justice of the Superior Court, who rendered decision for the plaintiff, to which the defendant duly excepted and prosecuted its bill of exceptions to the Supreme Court. The case was there pending on exceptions from April 21, 1933, until November 15, 1933, when the court rendered its opinion, in which the defendant's exception to the decision of the Superior Court was sustained, solely on the ground that that court had no jurisdiction *at law* to entertain the action, and directing the Superior Court to dismiss the action of debt on judgment "without prejudice to the right of the plaintiff to prosecute his claim in equity", as provided in the Massachusetts statute. See *Farrell* v. *The Employers Liability Assurance Corp., Ltd.*, 54 R. I. 18.

Thereupon, in December, 1933, the complainant brought the present suit in equity in the manner suggested by the court's opinion, *supra*, and as provided by Sec. 113 of Chapter 175, General Laws of Massachusetts. This statute substantially permits a judgment creditor to sue the insurance company in equity to reach and apply in satisfaction of the judgment, the insurance money due for loss or damage from bodily injury, where the judgment debtor was, at the accrual of the cause of action, insured against automobile liability therefor.

The policy issued by the respondent to Holmes on his Pontiac automobile, and later transferred by it to cover the Oakland, incorporates certain provisions of the Massachusetts law and makes them a part of the contract of insurance. Insuring Clause I provides insurance in accordance with and as required by Chap. 346, acts of 1925 of Massachusetts and all acts amendatory thereof and supplemental thereto. Insuring Clause II, "in addition to the insurance provided by Insuring Clause I of this Policy" provides extraterritorial coverage within the United States

and Canada. Insuring Clause III provides insurance for property damage, with which we are not concerned. The policy contains numerous references, agreements and conditions, some relating to all and others relating to some of the different kinds of insurance above referred to, requiring the reading as a whole for proper construction.

Among the statutory provisions in the policy, pertinent here, are conditions L(2) and L(3). L(2) is expressly made a part of the insurance under both Insuring Clauses I and II, above referred to, and reads as follows:

> "This Policy, the written application therefor, if any, and any rider or endorsement which shall not conflict with the provisions of Chapter 346 of the Acts of 1925, and all acts amendatory thereof and supplementary thereto, and/or Section 34A of Chapter 90 of the General Laws constitutes the entire contract between the Corporation and the Assured as respects the motor vehicle or trailer herein described."

L(3) is substantially a provision of Chapter 346, acts of 1925 of Massachusetts, as amended, referred to in condition L(2), and reads as follows:

> "No statement made by the Assured or on his behalf either in securing this Policy or in securing the registration of the motor vehicle or trailer covered thereby and no violation of the terms of this Policy and no act or default of the Assured, either prior or subsequent to the issuance of this Policy, shall operate to defeat or avoid this Policy, so as to bar recovery within the limit provided in this Policy by a judgment creditor proceeding under the provisions of Section 113 of Chapter 175 and Clause 10 of Section 3 of Chapter 214 of the General Laws."

Condition L(3) is expressly made part of Insuring Clause I. On the other hand, the policy does not exclude in express terms the operation of condition L(3) from insurance given under its extraterritorial coverage.

There was no question but that the insured had applied for the transfer of insurance to the Oakland, on the respondent company's forms, properly signed and delivered

to the respondent's agent, Holbrook, before the accident; that the company had received and indorsed it, and had actually transferred the coverage to the Oakland sedan and delivered the policy and rider to Holmes; and that, after immediate notice of the accident, it had taken over, through its attorneys, the complete control of the defense of the case, although it fully knew that the Oakland sedan, and not the Pontiac, was involved.

Although application for the transfer of this insurance to the Oakland automobile was admittedly received by the company's agent a week or more before the accident, and later approved, there was some dispute in the testimony as to when the transfer took effect. There was testimony indicating that the respondent's agent notified Holmes or his son before the accident that the insurance applied for had been approved and transferred. The rider making the transfer of insurance was traced in evidence, with the policy, to the possession of the respondent at its home office in Boston, following cancellation of the policy in October, 1930, after the accident. The respondent did not present this rider, as the best evidence of when it was actually dated and became effective, or of what change, if any, it made in the coverage and terms of the policy; nor did the respondent satisfactorily explain its absence. The respondent reluctantly presented the original policy after it previously had indicated the loss thereof, and then only after the court had strongly suggested the desirability of this presentation. Even then it offered the policy in evidence, without the rider, which was considered by the respondent so vital to its contention. The policy bore pin perforations thereon where the rider might ordinarily have been attached.

It is also significant, upon the question of what date the insurance upon the Oakland really became effective, and how far its other clauses may have affected the extraterritorial coverage, that Mr. Holbrook, the company's agent who made it out, countersigned it for the company and

handled the entire matter, was not called by the defendant to testify, although he still retained the same connection with the respondent company.

The trial justice, upon the evidence, found that the respondent had transferred the policy from the Pontiac automobile to the Oakland automobile with full knowledge of the accident involving the Oakland, and had taken over the control and defense of the case for the insured, and that thereby the respondent was estopped to deny that the Oakland was insured on the day of the accident. He also ruled that, by the terms of the statute and policy, the respondent was barred from interposing the defense of lack of coöperation on the part of the insured, and that the complainant's suit in equity was not barred by the statute of limitations.

The respondent now contends chiefly that there was no contract of insurance covering the Oakland at the time of the accident and that the court erred in holding that the respondent was estopped to deny its existence; that it was error, if there was a contract, to deprive it of the defense of lack of coöperation upon the part of the insured; and that, in any event, the suit was begun more than one year after the judgment was obtained and, therefore, was barred, according to the terms of the Massachusetts statute which created the right and remedy to sue the company.

In our view, the questions raised are not available to the respondent at this time, in view of its conduct and contensions and of the previous opinion in the case of *Farrell* v. *The Employers Liability Assurance Corp., Ltd., supra,* which was introduced in evidence in the instant case by the complainant, without objection by the respondent, as a part of the law of the case. In that former case, the Superior Court held that the Oakland car was covered by the policy at the time of the accident; that the defense of lack of coöperation by the assured was excluded by the terms of the policy; that under the Massachusetts statutes

the plaintiff was entitled to recover from the defendant on the policy the amount of his judgment against Holmes; and that under the Rhode Island statute an action at law was a proper procedure for such recovery. That court therefore rendered decision for the plaintiff for the amount of the judgment and interest.

This court, in reviewing that decision on a bill of exceptions, said in its opinion: "The defendant issued in Massachusetts its policy of insurance to said Holmes and incorporated therein the following provision: . . . ." It then quoted the condition "L (3)", which we have quoted *supra* and which had been relied on by the Superior Court as excluding the defense of lack of coöperation by the assured, and which, if applicable to the case, could clearly exclude that defense. We think the language in that opinion can only be fairly interpreted as a determination that the Superior Court was right in holding that the policy did cover the Oakland car at the time of the accident and that the defense of lack of coöperation by the assured was not available to the defendant.

The respondent did not vigorously contest the existence of a contract of insurance between it and Holmes covering the car involved in the accident. Indeed its conduct in assuming, after due notice, complete defense of the plaintiff's action against Holmes, and the sole reason for its motion to withdraw from the case, because of the insured's lack of coöperation, and its defense based thereon, presuppose the existence of the contractual obligation. Having obtained the relief it sought in the former case upon a contention that the contract of insurance in question did exist but was to be governed by Massachusetts law, it should not be heard to assert in substantially the same case before us that there was no such contract in existence. Therefore, and in view of the opinion in the former case, the contention of the respondent, that the court below erred in holding the respondent estopped to deny the insurance contract covering the accident, is not open to the

respondent at this time. *McAuslan* v. *Union Trust Co.,* 46 R. I. 176.

In connection with the respondent's defense because of the assured's failure to coöperate, it is to be noted that, in that case, the defendant did not deny that this defense would have been excluded, if the plaintiff had brought a suit in equity in Massachusetts to recover from the defendant the amount of his judgment. On the contrary, its only contentions on this phase of the former case were: (1) That by the law of Massachusetts, governing the policy, the above clause of exclusion applied only to suits in equity brought in Massachusetts; and (2) that the clause was against the public policy of Rhode Island and therefore could not apply to the case in this State.

The language of the former opinion, *supra,* indicates clearly that neither of these contentions then appealed to the court as sound. As to the latter contention, the court then said: "The purpose of the statute of both states is to secure to an injured party the benefit of a contract of insurance entered into between the party causing the injury and the insuring company. The fact that the Massachusetts statute makes recovery more certain by depriving the insuring company of certain defenses is not so contrary to our public policy as to warrant a denial of a remedy in our courts to one seeking recovery, in a proper action, on a policy of insurance similar to the one in suit."

This court then reversed the decision of the Superior Court on the sole ground "that the plaintiff has mistaken his remedy," and that recovery must be sought in equity, as prescribed by the Massachusetts statute; and therefore it directed the Superior Court "to dismiss the action without prejudice to the right of the plaintiff to prosecute his claim in equity."

That case, as already noted, was between the same parties and was based on the same contract, and the same substantive rights were at issue, as in the instant case, the only difference being as to the form of the proceeding and

as to the possible application here of the statute of limitations. The evidence also was substantially the same. Therefore, in view of the facts above stated, as to the admissions and contentions made by the present respondent in the former case and previously, and as to the determinations and statements set forth by this court in its opinion in that case, we are convinced that the finding of the Superior Court in the instant case, that the defense of refusal of coöperation by the assured was not available to the respondent, should be sustained.

But the respondent now seeks, notwithstanding the previous adverse disposition by the court, to urge that the excluded proof was admissible for a reason other than was then assigned. It now claims that the defense of lack of coöperation by the insured was excluded only from the part of the policy coverage within Massachusetts, and not from its extraterritorial coverage. Strangely, the respondent did not bring this to the attention of the court in the earlier case. If it felt the court had misconceived or misstated the law in that opinion, it never requested an opportunity to reargue the law on that point.

However, if we assume that the question now is properly open to it, we think that, in the present circumstances, the respondent's contention is more ingenious than sound. It makes the mistake of treating the Massachusetts statutes and their construction as they affect the interpretation of the policy in this case, a question purely of law for the trial court's independent opinion. The real question presented was not how the trial court as a matter of law would interpret the pertinent Massachusetts statutes and their effect upon the policy, but rather how the courts of Massachusetts have interpreted their own statutes and how, in the present circumstances, their interpretation affects the policy in this case. The interpretation of the policy apparently depended upon the construction and effect of certain Massachusetts statutes, incorporated therein.

In the absence of an appropriate statute, the trial court could not take judicial notice of the statutes of Massachu-

setts and their interpretation. Generally, the statutes of another State and their particular interpretation are facts to be pleaded and proved as any other material fact in the case. In *Callender, McAuslan & Troup Co.* v. *Flint,* 187 Mass. 104 at 107, the court said "that the construction of the agreement depends on the law of the place of acceptance may be conceded. *Nashua Savings Bank* v. *Sayles,* 184 Mass. 520, 522. But judicial notice cannot be taken of the laws of another State, which must be proved, and determined like other facts, and no evidence of their provisions can be received for the first time at the argument of a case in this court."

In *Cherry* v. *Sprague,* 187 Mass. 113 at 117, where the appellant sought to cite the statutes, and two cases of South Dakota appropriate to the subject-matter of the statute, the court said: "But the bill of exceptions upon which the case is here contains no statement of these citations nor of any evidence of the law of South Dakota, and it is apparent that the decision of the judge was made without taking into consideration the cases and the statute mentioned, and that we cannot consider them." See also *Johnson* v. *Scott,* 205 Mass. 294, at 301, 302; *O'Donnell* v. *Johnson,* 36 R. I. 308, at 313; *Taylor* v. *Slater,* 21 R. I. 104.

The trial court's interpretation of the statutes incorporated in the policy was a fact to be found upon the evidence. If the respondent relied upon a particular interpretation of the related statutes as they affected the rights of the parties under the policy, and of this complainant, which was different from the interpretation reached by the court, the burden was upon it to prove by proper evidence the validity of such interpretation.

This court has held: "The question of what is the law of Massachusetts is a question of fact, to be decided on evidence, and on such a question we can have no better evidence than the decisions of the highest judicial court of the State." *Horton* v. *Reed,* 13 R. I. 366.

But the transcript in the instant case discloses that no judicial decision of any Massachusetts court was introduced in evidence to support the respondent's particular construction of these statutes incorporated in the policy; nor was any such decision ever cited or brought to the attention of the trial court during a rather extended argument, and no other evidence was presented to show how the Supreme Judicial Court of Massachusetts construed the statutes or kind of policy in question. Without this assistance, the trial justice was forced to make an interpretation thereof solely on the evidence before him. He said: "In reading from this policy, I am led to believe that these so-called agreements and conditions do not specifically state that this defense shall be open to the company. In fact it is silent upon that question, looking at it from the best point of view from your" (meaning the respondent's) "standpoint. In reading the policy, I confess I can't say that it was the intention of the company when it made this contract to exclude that particular language from operation under the circumstances where the accident has happened outside the state." Apparently he noted that the respondent voluntarily, by its own writing, specifically made condition L(2) a part of the extraterritorial coverage. The terms of that condition quoted above, in substance, provide that this policy and any rider or indorsement *which does not conflict with the provisions of Chapter 346, as amended, constitute the entire contract.* The converse seems to be that, if a policy and rider or indorsement do conflict with Chapter 346, as amended, it will not constitute such a contract.

If that be so, the respondent apparently contended for a rider which it did not produce and which might well have been interpreted as conflicting with the provisions of Chapter 346, as amended. Such contention sought to eliminate condition L(3), quoted above, which deprived the respondent of certain defenses; condition L(3) was a necessary part of Chapter 346, as amended; and condition

L(2) in turn, by reference and effect, made condition L(3) a part of the contract. Significantly, as noted by the trial justice, the policy did not exclude condition L(3) by express terms from the extraterritorial coverage, as it could have done if intended.

In this situation and condition of the evidence, the terms of the policy may well have appeared to the trial justice as open, at best, to different interpretations. He evidently sought the intention of the parties on the evidence and applied the general rule of construction of insurance contracts by resolving all doubtful language or interpretation against the insurer. He also had in mind, according to the transcript, the earlier opinion in this case which indicated that the public policy of both Massachusetts and Rhode Island in these statutes was intended to assist the injured person.

In the absence of the rider, and of any provision in the policy expressly excluding from its extraterritorial coverage the operation of certain Massachusetts statutes, therein incorporated, and without the assistance of any pertinent judicial decisions of the Massachusetts court, the trial justice found his interpretations of the statutes and policy *as a fact* upon the evidence before him. The terms of the policy were in dispute and were open at least to different inferences and interpretations. He was entitled to construe the policy, written in this special form by the respondent company, most favorably to the insured and the complainant. We cannot say that the justice was clearly wrong or that his decision failed to do justice between the parties. *Simeone* v. *Antonelli,* 52 R. I. 41; *Dwyer* v. *Curria,* 52 R. I. 264. Whether or not the interpretation of the policy and statutes, reached by the trial justice as a fact upon the evidence, is in harmony with some later decisions of the Massachusetts Supreme Judicial Court upon such statutes and policy, as a matter of law, is not open in this case to the respondent, and is not here decided.

We also think the trial justice was justified, in the circumstances of this case, in finding that the respondent was not entitled to prevail upon its contention that the complainant's right to sue in equity was barred by the expiration of the one year mentioned in the Massachusetts statute of limitations.

In its earlier opinion, *supra,* our Supreme Court qualified its dismissal of the action at law, not with the general words, "without prejudice", but with the special words: *"Without prejudice to the complainant's right to sue in equity,"* under the Massachusetts statute. (Italics ours.) These words seem to indicate the court's intention to cover a special case and not an ordinary one.

In a case involving an election of remedies, which the instant case does not, this court has said that the effect of a dismissal without prejudice, in such ordinary case, was to leave the parties as if no action had been instituted. *Reynolds* v. *Hennessey,* 17 R. I. 169, at 175.

In *Taylor* v. *Slater,* 21 R. I. 104, at 108, the court cites the *Reynolds* case, *supra,* on the effect of the words "without prejudice" in a decree of dismissal, saying: "It gives to a complainant the right to state a new and proper case, if he can, but it takes away no right to defence to such suit on any ground other than that of the judgment as a bar." But the court then added significantly: *"Had that bill been filed with reasonable diligence, resulting in such a decree, the case would have been different, but,* as it stands, *injurious delay* without excuse *is apparent in both bills."* (Italics ours.)

The latter portion of this quotation seems to indicate clearly that, if the original action had been brought with reasonable diligence, but was dismissed without prejudice on some other ground, the court would have given the words "without prejudice" a different effect from that previously indicated for the *ordinary* case.

In the instant case, the original action was brought in time, and the respondent's contention, at least in effect,

would seem to make the judgment thereon operate as a bar to the suit in equity, notwithstanding the language of the court in the *Taylor* case, *supra*.

In any event, the cases above referred to in addition to, resting on somewhat different facts, do not seem to prevent our giving to a specially qualified order of dismissal by this court, in an exceptional case, a different effect from a decree of voluntary dismissal "without prejudice." in an ordinary case. It must be remembered that this was not an ordinary case. The court was then confronted with inescapable facts which were exceptional and peculiar to the instant case. The complainant had recovered his original judgment on May 25, 1932; had begun his action of debt against this respondent on June 9, 1932, or well within the period of one year from the judgment, if there were such a limitation on the right to sue the respondent company; the respondent's bill of exceptions was filed in this court on April 21, 1933, but was not heard until October 16, 1933, and was not decided until November 15, 1933, almost six months after the expiration of the alleged one-year statutory limitation. If the court intended to adopt the view urged by the respondent, that the one-year limitation is an indispensable condition imposed by the statute upon *the right* to sue in equity, then obviously there existed, on November 15, 1933, *no right at all* to sue in equity and *no reason* to order dismissal of the action at law with the special qualification *"without prejudice to the complainant's right to sue in equity"* under the Massachusetts statute rather than to enter an unqualified order of dismissal. (Italics ours.) It would seem that the court intended to treat it as a special case.

Certainly this was not mere language to prevent the conclusion of the complainant by any supposed election of remedies, which is the only explanation offered by the respondent. By the opinion in that case, as by the respondent's own contention, there was *only one* remedy open to the complainant. Consequently, on that basis,

there could have been no question in the court's mind of any election of remedies. On the contrary, the court refers, in the opinion, to the action at law as a mistaken remedy.

Whether, if the above-indicated view of this dismissal is taken, the court considered that the one year mentioned in the statute of limitations was not an indispensable condition imposed upon the created right, but related only to the remedy; or that this limitation was modified by some other provision of the Massachusetts statutes of limitations; or that the so-called tolling statutes, either of Massachusetts or of Rhode Island, appeared to authorize another action within a given time after the abatement of the action at law, we are not prepared nor required to say here. The court may have intended to do, in that case, what it considered to be within its broad powers to prevent injustice between the parties. In any event, we think the language used is at least open to the interpretation that the court intended to indicate that the respondent's contention in this regard was not to be extended so as to bar the complainant's right to sue in equity.

But in the instant case there is a stronger reason to sustain the finding of the trial justice on this point. The respondent's defense upon the statute of limitations is based on the contention that this suit was not brought until more than one year after the recovery of judgment by the plaintiff against the assured, and on the fact that the Massachusetts statute requires that a suit in equity, such as this, "shall be commenced within one year next after the cause of action accrues." The statute, referred to in evidence, is apparently General Laws of Massachusetts, Chap. 260, § 4. But there was also in evidence § 32 of the same chapter, which is the general statute of limitations, providing as follows: *"Proceedings Upon Failure of Original Action.* § 32. *Extension of time in case of abatement.* If, in an action duly commenced within the time limited in this chapter, the writ fails of a sufficient service

or return by reason of an unavoidable accident or of a default or neglect of the officer to whom it is committed . . . or if the action is otherwise avoided or defeated by the death of a party thereto or for any matter of form . . . , the plaintiff or demandant or any person claiming under him may commence a new action for the same cause within one year after the abatement or other determination of the original action . . . ."

The trial justice, upon this state of the evidence, apparently found as a fact that § 4 of the statute of limitations was just as much subject to the provisions of § 32 of that statute as was any other of its sections which fix period of limitations for various causes of action; and that if the cause of action in the instant case was governed by § 4, as contended by the respondent, it was governed by it as qualified by § 32, just as it would have been if the former case between the same parties and the instant case had both been brought in Massachusetts; that the former case was brought within the period of one year fixed by § 4 of the Massachusetts statute, and it was dismissed solely on the ground that the proper form of remedy was in equity and not at law, and "without prejudice to the right of the plaintiff to prosecute his claim in equity"; and that the instant case was brought within one year after the former case was thus defeated for a matter of form. The only evidence that was before the Superior Court as to the Massachusetts law on this point was the bare language of the statutes above referred to.

We have stated, *supra,* the statutes of another State and their interpretation are facts to be proved as any other facts. This was not a case where there was only one statute and where the only reasonable interpretation was as the respondent contends, or where judicial decisions had been introduced in evidence and were in agreement. The best evidence would have been the interpretation of these Massachusetts statutes as they affect the policy, as made by the Massachusetts Supreme Judicial Court. *Horton* v. *Reed, supra.*

As was aptly said by *Justice Gummere* in the case of *Title Guarantee & Trust Co.* v. *Trenton Potteries Co.,* 56 N. J. Eq. 441, and which was cited with approval in *Coral Gables* v. *Kretschner,* 184 A. 825: "In order to know what the law of a foreign state is on a given subject, we need something more than the production of the statute, for that only gives the words in which the law is written. The question to be determined is not what the language of the law is, but what the law is altogether, as shown by exposition, interpretation and adjudication."

In the absence of any assistance from the respondent by way of decisions of Massachusetts courts upon the subject-matter, either in evidence or cited, the trial justice interpreted what appeared as a conflict between sections of the Massachusetts statute in evidence and found as a fact that the suit in equity was not barred thereby. This finding was consistent with the evidence before him and with the court's earlier opinion, *supra.* In the particular circumstances of this case and in view of the earlier opinion, we can not say that the trial justice was clearly wrong in such a finding upon the evidence as presented.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Superior Court for further proceedings.

Moss, J. I do not dissent from the majority of the court in the final disposition of this case. I do not dissent from the first part of that opinion up to and including the statement that "in view of the facts above stated, as to the admissions and contentions made by the present respondent in the former case and previously, and as to the determinations and statements set forth by this court in its opinion in that case, we are convinced that the finding of the superior court in the instant case, that the defense of refusal of coöperation by the assured was not available to the respondent, should be sustained."

But I do dissent from the reasoning which follows this quoted language and by which the court reached a con-

clusion to the effect that even apart from the facts above referred to in this language the findings of the trial justice as to the interpretation of the policy, and as to the interpretation of the Massachusetts statutes referred to therein, and as to their applicability to the defense of refusal of coöperation by the insured, should be sustained and therefore also his ruling, based on these findings, that that defense was not open to the respondent.

There was no testimony by any expert as to the Massachusetts law relating to these matters, and the written evidence upon which he based his findings, namely, the policy and the Massachusetts statutes, which were brought before him by stipulation and reference, is before us just as it was before him. Therefore, in my judgment, we can make findings thereon as well as he could. We are untrammeled by his findings; and if it were not for the respondent's contentions in the former case between these same parties and the opinion of this court therein, I should not be prepared to say that under a proper interpretation of the policy and of the Massachusetts law relating thereto the defense of refusal of coöperation by the assured would not be open to the respondent in this suit by the injured person, just as it would have been in an action on the policy by the assured against the respondent.

I dissent also from that part of the opinion of the court in which it is held that certain words in the direction by this court in the former case to the superior court to dismiss the action at law, and in the order of the latter court dismissing that action accordingly, namely, "without prejudice to the right of the plaintiff to prosecute his claim in equity," had the effect of preventing the respondent from relying, in the instant case, upon the Massachusetts statute of limitations relating to a proceeding of this kind.

According to the information which I have been able to obtain on the subject, the language above quoted is in accordance with the usual wording of a "without prejudice" provision in an order or decree dismissing a legal or equit-

able proceeding; and, in my judgment the only effect which such a provision has is to prevent such order or decree from being set up by the defendant in a later proceeding, to which the order or decree is stated to be "without prejudice", in support of a defense of *res judicata*. Under the rule laid down in all the pertinent authorities which I have been able to find, such a provision has no other effect and cannot prevent the defendant from availing himself of any other defense which would otherwise be available to him, including one based on laches or on the statute of limitations.

In the opinion of the court in the instant case a part of the opinion of this court in *Taylor* v. *Slater,* 21 R. I. 104, at 108, is quoted, in which is stated that such a "without prejudice" provision in a decree of dismissal "gives to a complainant the right to state a new and proper case, if he can, but it takes away no right of defense to such suit on any ground other than that of the judgment as a bar." The language from that opinion next quoted in the opinion of this court in the instant case, does not, in my judgment, derogate from that ruling in the slightest degree. The defense at issue in that case was laches and not the statute of limitations; and this court, in the later language, was simply stating, by way of *dictum,* a rule which is a part of the equitable doctrine of laches, namely, that if the former proceeding had been begun with due diligence, then, if that proceeding came to an end without a decision on the merits, and the complainant began a new suit within a reasonable time thereafter, the defense of laches would not be available to the respondent, under the doctrine of laches. The actual *decision* of this court in *Taylor* v. *Slater, supra,* was that since the former proceeding had *not* been brought with due *diligence,* the defense of laches *was* available to the respondent in the later suit, *notwithstanding the "without prejudice" provision.*

Two rules that are exactly analogous to the *dictum* and the decision just discussed are well established also when

a statute of limitations and a "tolling" provision are involved. If the first case is begun *within* the statutory period of limitations and is dismissed without prejudice to the right of the defendant to bring a new action, such new action may be brought within the period allowed by the "tolling" provision, and a defense based on the regular statute of limitations will not be available to the defendant. But if the first case is begun *after* the statute has run against it, the "tolling" provision will not prevent the defendant from relying on the statute of limitations in the second case, whether or not the first case was dismissed without prejudice to the right of the plaintiff to bring a new action. In other words, a "without prejudice" clause has no effect on the availability of a defense based on such statute.

The opinion in *Taylor* v. *Slater, supra,* was quoted from and the decisive rule therein laid down by this court was affirmed and applied, by the United States Circuit Court of Appeals for the fifth circuit, in *Southport Mill, Ltd.* v. *Commissioner of Internal Revenue,* 38 Fed. (2d. ed.) 986, (1930). See also *Nevitt* v. *Bacon,* 32 Miss. 212; 2 Black on Judgments, (2d. ed.) 1082, § 721; 2 Freeman on Judgments, (5th ed.) 1587, § 754. I can see no reason for treating the former case between the parties in the instant case as in any way exceptional with regard to this matter; nor even any reason for believing that this court then, in inserting the "without prejudice" provision in its opinion, had in mind the Massachusetts statute of limitations, which had no relevancy in that case.

In my opinion the "without prejudice" provision, in the direction to the Superior Court by this court in the former case and in that court's order of dismissal, should not be held to prevent the respondent in the instant case from availing itself of the Massachusetts statute of limitation, if it would otherwise constitute a good defense.

I concur in the result reached in the last part of the opinion of the court in the instant case, that under the provi-

sions of the Massachusetts general statute of limitations the complainant is not barred by the fact that the case was not commenced within one year after the plaintiff recovered his judgment against the assured, since the former case was commenced within that period and was defeated for a matter of form less than one year before the instant case was commenced. But I do not, as the court does, reach that result because the trial justice found as a fact, from conflicting evidence, that this case was not barred by those statutory provisions, which were brought before him, and we ought to sustain his finding unless clearly wrong.

On the contrary, as there was no expert testimony in the case, and the statutory provisions are before us, just as they were before him, I see no reason why we should not exercise our independent judgment as to their proper interpretation and effect, without being trammeled by his finding. Apparently no Massachusetts decisions as to these provisions were submitted to him, and, if not, we are probably not bound to give to these provisions the interpretation and effect which have been given to them by such decisions. But we can properly consider such decisions and give them such weight as in our judgment they are entitled to, as precedents, just as we can properly consider decisions from other states as to the interpretation and effect of similar provisions.

Such a decision is *Taft* v. *Stow,* 174 Mass. 171, 54 N. E. 506. The provision there involved was one in the Massachusetts statute of limitations relative to actions by creditors of estates of deceased persons, and was that if an action commenced against an executor or administrator, in due time, is defeated by reason "of a mistake in the form of the proceeding," the plaintiff "may commence a new action for the same cause within one year thereafter." It was held to apply where a cause of action, which had been brought at law, was defeated because it should have been brought in equity and for some other reasons of form, and the plaintiff, with due diligence, brought a suit in equity

on the same cause of action. See also *Coffin* v. *Cottle,* 16 Pick. 383; *East Tennessee Iron & Coal Co.* v. *Lawson,* 35 S. W. 456; and *dicta* in *Jordan* v. *County Commissioners of Bristol,* 268 Mass. 329, 167 N. E. 652; and *Cumming* v. *Jacobs,* 130 Mass. 419, 421.

On general principles of construction of statutes and in the light of these cases, I am convinced that the findings which are set forth in the opinion of the court in. this case as having been apparently made by the trial justice with respect to the defense of the statute of limitations, are correct and govern this case; and I therefore agree with my associates that that defense was properly ruled out by the trial justice.

For the reasons above given, while I dissent from some parts of the opinion of the court, I do not dissent from the final disposition of the case, as made therein.