**Roberto HAU, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 77–1505.**

United States Court of Appeals, First Circuit.

Argued Feb. 15, 1978.

Decided May 17, 1978.

Francisco Castro Amy, San Juan, P.R., for plaintiff, appellant.

Jose A. Anglada, Asst. U.S. Atty., Chief, Civ. Div., San Juan, P.R., with whom Julio Morales Sanchez, U.S. Atty., San Juan, P.R., was on brief, for defendant, appellee.

Before CAMPBELL, MOORE * and BOWNES, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a judgment granting the motion of the United States of America (Government), defendant-appellee, to dismiss the claim of plaintiff-appellant, Roberto Hau, for lack of jurisdiction on the basis that he had filed his administrative Federal Tort claim against the Veterans Administration after the running of the statute of limitations under 28 U.S.C. § 2401(b), and for reasons hereinafter stated, that judgment is affirmed.

I.

On August 26, 1974 Roberto Hau was admitted to the Veterans Administration Hospital (Hospital) in Rio Piedras, Puerto

* Of the Second Circuit, sitting by designation.

Rico, for treatment of renal insufficiency and arterial hypertension. On September 4, 1974 an arteriogram was performed through the right femoral artery. Following the examination Hau suffered swelling and pain in the lower right extremity. When the pain persisted, he sought treatment from two different practitioners in his hometown of Isabela, Puerto Rico. They suggested that he see a specialist, but according to Hau's affidavit, "[n]one of them gave me an opinion or diagnosis, but only prescribed medication for the pain." App. 19.

Hau visited the Hospital and attempted to see Dr. Cardona, Chief of Outpatient Services, to arrange an appointment with a specialist. Dr. Cardona was unavailable, so Hau sent a letter to him on November 11, 1974. The letter stated in part as follows:

"I came to see you at your office but it was impossible to see you since you were in a meeting. I talked there with Dr. Medina. He wanted me to be seen by a ·general practioner. The physicians who are treating me at Isabela and Arecibo understand that I should be seen by specialists. I have lost strength in the right leg where I was subjected to an arteriogram. A section of this same leg has no sensibility; and where the needle was introduced, I have a hard lump. *I understand that due to the negligence of the hospital I have become disabled from that leg.*" (emphasis supplied) (translated from the original in Spanish). App. 11.

No specialist was provided by the Hospital, but on March 19, 1975 Hau visited a specialist, Dr. Arbona, whom Hau had found independently. Dr. Arbona indicated in his report that "[t]he patient associates these symptoms with a renal arteriogram performed through the right femoral artery." App. 22. However, he diagnosed the problem as a "femoral nerve injury, affecting mainly sensory branches, cause undetermined". *Id.*

On September 2, 1976, two days less than two years after the arteriogram, Hau filed a complaint under the Federal Tort Claims Act (Act), 28 U.S.C. § 2671 *et seq.,* alleging malpractice against the Hospital.[1] This suit was voluntarily dismissed on November 30, 1976 after the Government moved to dismiss for failure to exhaust administrative remedies, based on appellant's previous failure to institute an administrative claim.

Hau then instituted, on December 10, 1976, an administrative claim with the Veterans Administration District Office in San Juan, two years and one month after he wrote the letter to Dr. Cardona. While the administrative claim was pending, on March 2, 1977 Hau visited another specialist who diagnosed Hau's illness as "[n]europathy, probably post-traumatic to needle introduction at the time of arteriography through the right femoral artery". App. 24. The Veterans Administration denied the claim on April 18, 1977, based on the expiration of the statute of limitations. Hau then brought this action in the district court, claiming negligent conduct on the part of the employees of the United States. The district court granted the Government's motion to dismiss on the ground that the claim was not brought within the two year statute of limitations for tort claims against the United States. Appellant appeals from this dismissal.

## II.

Hau argues that in spite of his November 11, 1974 imputation of negligence against the Hospital, he in fact had no knowledge regarding the exact nature and cause of the

---

**1.** 28 U.S.C. § 2674 provides in part:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."

Malpractice suits against the Veterans Administration are included:

"[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b).

injury sufficient to draw the conclusion that the acts which damaged his leg could constitute malpractice. He argues that he first learned that the femoral nerve of his right leg was damaged when he was examined by Dr. Arbona on March 19, 1975 and that he did not learn of the cause of the damage until the examination on March 2, 1977. Therefore, Hau argues, his application to the Veterans Administration was timely filed.

■ A tort claim against the United States is covered by a two-year statute of limitations. The Act provides:

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate *Federal agency* within *two years* after such claim *accrues . . . .*" (emphasis added). 28 U.S.C. § 2401(b).

In determining when a claim accrues, for purposes of the Act, this Circuit, unlike other circuits which follow federal law,[2] follows the lex loci rule—the applicable law is the law of the state where the claim arose. *Caron v. United States,* 548 F.2d 366 (1st Cir. 1976); *Tessier v. United States,* 269 F.2d 305 (1st Cir. 1959). Thus, the date when Hau's claim accrued is to be determined by the law of Puerto Rico. In this regard Puerto Rican law and federal law are the same, because the Puerto Rican Civil Code dates the accrual of an injury "from the time the aggrieved person had knowledge thereof". 31 L.P.R.A. § 5298. Neither party presented any cases indicating that the Puerto Rican statute was interpreted differently from the federal rule, and, indeed, both parties as well as the district court relied on interpretation of the federal law. The federal law with respect to accrual of a claim is that "a claim for malpractice accrues against the Govern-

ment when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice". *Quinton v. United States,* 304 F.2d 234, 240 (5th Cir. 1962).

We have examined the cases cited by appellant in support of his contention that he was not aware, until 1975 at the earliest, of possible malpractice.[3] None of the cases cited, or any others which we have examined, provide a dispositive answer as to when the appellant should be deemed to have discovered that malpractice occurred. Instead, the particular factual circumstances of this case must be examined to determine the time of appellant's discovery of the alleged malpractice.

No evidence in the record indicates that at the time of the arteriogram, Hau knew or should have known about any negligence. He was told, according to his affidavit, that some swelling and pain were natural results of the procedure.

■ However, when the pain persisted he was examined by two doctors in his local community, who advised him to seek a specialist. The letter written to Dr. Carbona indicates that, at least by November 11, 1974, Hau was aware of the harmful effects of the treatment and that the Hospital allegedly committed acts constituting malpractice. He clearly stated in the letter, after describing his symptoms, "I understand that due to negligence of the hospital I have become disabled from that leg". App. 11.[4] The district court determined that "the letter of November 11, 1974 contains Plaintiff's express and unequivocal imputation of negligence on the part of the Veteran [sic] Administration Hospital and convinces this Court that, as of that date, the Plaintiff was well aware of facts which

---

2. *Portis v. United States,* 483 F.2d 670 (4th Cir. 1973); *Tyminski v. United States,* 481 F.2d 257 (3d Cir. 1973); *Toal v. United States,* 438 F.2d 222 (2d Cir. 1971); *Kington v. United States,* 396 F.2d 9 (6th Cir. 1968); *Quinton v. United States,* 304 F.2d 234 (5th Cir. 1962); *Ashley v. United States,* 413 F.2d 490 (9th Cir. 1969).

3. Appellant relies particularly on *Johnson v. United States,* 271 F.Supp. 205 (W.D.Ark.

1967); *Toal v. United States, supra,* n.2; *Tyminski v. United States, supra* n.2; *Portis v. United States, supra* n.2.

4. That this statement was not mere idle use of words is buttressed by Hau's statement to Dr. Arbona on March 19, 1975 that he associated the symptoms with the arteriogram.

would have led a reasonable man to believe, as he was indeed led to believe, that he had been negligently treated at the Hospital". App. 29. As stated in *Reilly v. United States,* 513 F.2d 147 (8th Cir. 1975), "[W]hen the facts [become] so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations [begins] to run against the appellant's cause of action". *Id.* at 150. The statement in the letter indicates that Hau was well aware that the medical procedure may have been negligently performed. Thus, the cause of action accrued no later than November 11, 1974. Once the date of accrual of a claim is determined, as here, with certainty, the appropriate statute of limitations must be applied strictly.

The dismissal for lack of jurisdiction is *AFFIRMED.*