Gerald V. GIRARD, Jr. and Elizabeth M. Girard

v.

UNITED STATES of America (VETERANS ADMINISTRATION).

Civ. A. No. 78–12.

United States District Court,
D. New Hampshire.

Aug. 28, 1978.

Thomas P. Colantuono, Nashua, N. H., for plaintiffs.

William H. Shaheen, U. S. Atty., Concord, N. H., for defendant.

## MEMORANDUM OPINION

DEVINE, District Judge.

Plaintiffs, husband and wife, seek recovery under the Federal Tort Claims Act (28 U.S.C. § 1346[b]; 28 U.S.C. §§ 2671–80) for alleged medical malpractice on the part of certain physicians employed by the Veter-

ans Administration at its facility in Manchester, New Hampshire. The claims are to the effect that these physicians failed to accurately diagnose the symptoms of plaintiff Gerald V. Girard as those of coronary heart disease during a period of treatment between January 1972 and February 1975.

The Government moved for summary judgment and/or to dismiss, and the motions came before the Court for hearing on August 24, 1978. The Court has heard the oral arguments of counsel, and has reviewed the various exhibits furnished, including interrogatories, affidavits, letters, and medical records. The Court has also reviewed the memoranda of law submitted by the respective parties.

The Government contends that the instant actions are barred by the provisions of 28 U.S.C. § 2401(b), which states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

This statute is a jurisdictional requisite to suit in the federal courts, and if an action is not commenced within the prescribed period, a federal district court is without jurisdiction to entertain it. *Hammond v. United States*, 388 F.Supp. 928, 930 (and cases cited therein) (D.N.Y.1975). In this Circuit, the determination of when "a claim accrues" within the meaning of the statute is to be determined by state law. *Hau v. United States*, 575 F.2d 1000 (1st Cir. 1978); *Caron v. United States*, 548 F.2d 366 (1st Cir. 1976); *Tessier v. United States*, 269 F.2d 305 (1st Cir. 1959).

New Hampshire follows the "discovery rule" in medical malpractice actions. *Shillady v. Elliot Community Hospital*, 114 N.H. 321, 320 A.2d 637 (1974); *Patrick v. Morin*, 115 N.H. 513, 345 A.2d 389 (1975); *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. ——, 378 A.2d 1138 (1977). Under that rule:

A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendants' *wrongful* conduct. *Brown, supra*, 378 A.2d at 1140.

## THE FACTS

Plaintiff Gerald V. Girard served as an Air Force officer from November 1, 1962, until March 6, 1971. On return from duty as an air traffic controller in Viet Nam in 1968, he was assigned to Stewart Air Base in Newburgh, New York. He remained on duty there until his transfer to Hanscom Air Base in Bedford, Massachusetts, in December of 1969.

While serving at the above duty stations, plaintiff commenced to suffer from chest pains in the mid-sternal region, which he thought were due to heartburn or indigestion, and which he self-treated. His attempts at snow shoveling in the winter of 1969–70 caused such pain that he was unable to perform such tasks. The frequency and severity of the chest pains increased in early 1970, and on June 22, 1970, plaintiff consulted with Doctor Tracy, an Air Force physician at Hanscom Field.

Doctor Tracy performed a routine blood pressure test, and advised plaintiff that his chest pains were the result of hyperventilation, caused by excessive tension. Valium, probanthin, and Maalox were prescribed for what was considered to be a nervous stomach. The doctor refused additional testing for heart problems, despite plaintiff's expressed apprehension, because he felt that at his age of 34, plaintiff was "too young to have heart trouble". Additional requests by plaintiff for heart testing in August and September of 1970 were refused, and treatment was continued as before.

On September 22, 1970, plaintiff had a severe attack of chest pain. Mrs. Girard, who is a nurse, thought he might be suffering from a perforated ulcer, and rushed him to the Air Base Dispensary. The duty medical officer, Doctor Borg, received

plaintiff's complaints, checked his previous medical records, tested his blood pressure, and administered a shot of valium. He performed no other tests, and advised Girard not to be concerned about his heart problems, and that he should return home with instructions to continue his present medication.

Plaintiff returned to Doctor Tracy on the following day. The pain had subsided, and an EKG and a GI series proved negative. Tracy therefore concluded that the plaintiff's complaints were psychologically oriented, and he refused further testing.

The chest pains soon became a daily occurrence, and plaintiff was forced to give up most physical activity. He transferred to a sedentary position in computer research, which allowed him to pace himself so that he could fulfill his duty requirement. An Air Force separation physical on October 28, 1970, was conducted by Captain Moore, and this exam included a routine chest x-ray and a routine resting EKG. The plaintiff went to see Doctor Tracy to complain that it was unfair for the Air Force to separate him without curing his symptoms, and Tracy responded that if he had further complaints, he should refer them to the Veterans Administration.

Following separation to the Reserves on March 5, 1971, plaintiff moved to Nashua, New Hampshire. He attempted to start a business, but his chest pains forced early retirement, and his wife returned to nursing to assist in the support of the family.

In the fall of 1971, plaintiff sought assistance from the Veterans Administration, and he was seen in Manchester by Doctor Smith on January 18, 1972. Plaintiff related his complaints from 1970, and Smith conducted a physical examination, which included x-rays, EKG, GI series, and a blood pressure check. His diagnosis was esophagitis, inactive; hiatus hernia with schatzki ring; residuals of duodenal ulcer, inactive; and residuals of a fracture of the right clavicle, healed. Plaintiff contends that Smith again advised him that he should not be concerned about heart problems as he was "too young". On the basis of these

findings, the plaintiff was awarded 10% disability for service-connected ailment.

On February 16, 1972, plaintiff executed an application for medical benefits, and was seen at the Veterans Administration by Doctor Adelman. Adelman did not have available the report of Doctor Smith's examination on January 18, 1972, but he prescribed medication associated with a duodenal ulcer and a hiatal hernia, and recommended a bland diet to the plaintiff.

On October 30, 1972, Girard was seen again by Doctor Smith with complaints in the upper part of the abdomen and pains in the mid-abdominal region. No laboratory tests or x-rays were performed, as Doctor Smith felt he was continuing with pains from the conditions that he had previously diagnosed, and he prescribed medication to combat such complaints.

On September 2, 1973, plaintiff began to suffer palpitations of the heart, and he went to the Nashua Memorial Hospital, where the resident on duty performed an EKG, which demonstrated frequent ventricular premature beats. He was shortly seen by Doctor Curelop, a board-certified internist, who performed a complete physical examination, and concluded that plaintiff suffered from ischemic heart disease and had suffered from this condition since 1970. Doctor Curelop further found that Girard had suffered a coronary occlusion and probably a small myocardial infarction, and that he had chronic angina symptoms. This diagnosis was confirmed by consultation with Doctor Criscitiello of New England Medical Center. (Govt. Exhs. B and I.) On September 28, 1973, plaintiff executed and forwarded to the Veterans Administration a "Statement In Support Of Claim" (Govt. Ex. A), wherein he stated in pertinent part:

> I wish to re-open my claim for additional compensation based on a recent attack which has been diagnosed by my private Doctor as a result of a coronary attack I had while in the Air Force at Hanscom Field, Mass., in 1970. . . .

On January 24, 1974, plaintiff was again seen by Doctor Smith at Manchester. At that time he complained of chest pains radiating into the arm and advised Smith that his doctor in Nashua had diagnosed a heart condition. Examination revealed mild dyspnea after exercise, and although the EKG was normal, Doctor Smith diagnosed the condition as coronary insufficiency, treated, manifested by chest pains with mild dyspnea. He gave no prescription, but advised plaintiff to continue on the treatment recommended by Doctor Curelop.

On March 8, 1974, the Veterans Administration, upon review of the plaintiff's records to that date, including the reports of Doctors Curelop and Smith, ruled that his heart condition was non-service connected, and denied compensation for this condition.

On July 11, 1974, plaintiff wrote a lengthy letter to the Veterans Administration complaining of the denial of his compensation, and concluding, in pertinent part:

> Finally, if my case and appeal is not resolved in ninety days, my wife will file suit . . . on the basis of malpractice, . . . . (Govt. Exh. F).

Plaintiff continued to have severe chest pains, and on January 8, 1975, he saw Doctor Heslin, Chief of Staff at the Veterans Administration Hospital in Manchester. He again contended that he had suffered from heart disease, which he had incurred while in the Air Force, and that he was under treatment for same by Doctor Curelop. Heslin agreed to (and did) review plaintiff's records and arranged for him to see Doctor Wright, Chief of Medicine. Wright examined plaintiff on February 3, 1975, and concluded that even though the EKG was normal, he might well have coronary artery disease, and that he should have further tests at the Veterans Administration in West Roxbury. An angiogram was performed at West Roxbury Veterans Administration Hospital on February 27, 1975, which showed a substantial blockage of the right coronary artery, and it was suggested that plaintiff continue on medication with the possibility of coronary by-

pass if there were no improvement. Surgery was performed in May of 1975 and April of 1976, and plaintiff was subsequently awarded 100% service-connected disability for his heart problems.

The administrative claims herein were filed by the plaintiff on February 15, 1977 (Govt. Ex. G).

## THE LAW

The only issue before the Court is not whether the Veterans Administration physicians were negligent in their diagnosis and treatment of plaintiff, but whether his claim is time-barred by the applicable statute of limitations (28 U.S.C. § 2401[b], *supra*). It is the position of the Government that plaintiff well knew of his cause of action within the time period allowed, but failed to act in accordance with such knowledge. Plaintiff argues, contra, that it was not until the actual testing at West Roxbury in 1975 that he was aware that a cause of action existed upon which he could advance his claim.

The application of the New Hampshire discovery rule requires that the Court identify, evaluate, and weigh the interests of the opposing parties. *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174. In the instant case, the record indicates that, although plaintiff did not know the exact *extent* of his heart disease prior to the final diagnostic tests in West Roxbury in 1975, he was well aware of the *existence* of this condition, and of the fact that he might have a malpractice claim as early as September and October of 1973 when Doctors Curelop and Criscitiello confirmed the existence of this condition (Govt. Exhs. B and I). Furthermore, Doctor Smith diagnosed his condition as coronary insufficiency as a result of his examination in January 1974, and the Veterans Administration conceded in March of that year that he had a heart condition, but refused to consider that it was service connected.

The extent of the problem was also known to plaintiff Elizabeth M. Girard, where in a letter to New Hampshire's sen-

ior Senator (Govt. Ex. H), she states, in pertinent part:

> Two years ago my husband had a severe attack of cardiac irregularity—this time I sent him to Doctor Sidney Curelop (Nashua) and this is when we found out his ulcer, esophagitis was advanced athroschlerosis [sic]—especially severe in a 38 yr. old man. The problem has been made worse by the fact that Manchester VA treated him for the wrong problem.

And, in his letter of July 11, 1974, to the Veterans Administration, the plaintiff threatened suit for "malpractice".

Thus, totally unlike the situation that existed in *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. ——, 378 A.2d 1138, the plaintiff was not relying on the fact that he had been cured by the treatment received from the Veterans Administration. At the time he had been seen by Doctor Smith, he had been told to continue on the medication prescribed by Doctor Curelop, who was treating him for his heart condition. From that point forward, he was well aware that previous diagnoses relative to stomach problems were in obvious error.

It is well established in the law that one who knows he has suffered from malpractice may not postpone an action until the full extent of his damage is ascertained. *Ashley v. United States*, 413 F.2d 490 (9th Cir. 1969); *Toal v. United States*, 438 F.2d 222 (2d Cir. 1971); *Hulver v. United States*, 562 F.2d 1132 (8th Cir. 1977). Here, the plaintiff's express and unequivocal imputation of negligence on the part of the Veterans Administration Hospital set forth in his letter of July 11, 1974 (Govt. Ex. F), indicates his full knowledge of the alleged wrongful conduct on the part of the physicians employed by the Veterans Administration. *Hau v. United States*, 575 F.2d 1000, 1002, 1003 (1st Cir. 1978). For the reasons set forth herein, the Court, therefore, finds and rules that the actions herein are time-barred by the application of 28 U.S.C. § 2401(b). It is therefore ordered that the claims be and they hereby are dismissed for lack of jurisdiction. *Hammond v. United States, supra.*

SO ORDERED.