**Frank MARRAPESE,**
**Plaintiff, Appellee,**

**v.**

**The STATE OF RHODE ISLAND, et al., Defendants, Appellants.**

**No. 83–1917.**

United States Court of Appeals,
First Circuit.

Heard Aug. 6, 1984.

Decided Dec. 5, 1984.

Rehearing and Rehearing En Banc
Denied Feb. 19, 1985.

Bownes, Circuit Judge, filed dissenting opinion.

Richard B. Woolley, Asst. Atty. Gen., Providence, R.I., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R.I., was on brief, for defendants, appellants.

Gerrick Van Deusen, North Providence, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Rhode Island following a jury trial on plaintiff Frank Marrapese's claims against the State of Rhode Island and certain state officials. Marrapese's cause of action stems from an incident that occurred on March 16, 1975. The state police on that date, in connection with a murder investigation, forced Marrapese to undergo a benzidine test designed to indicate the presence of blood on the skin. The police did not have a search or arrest warrant at the time; and they administered the test over the objections of Marrapese and his attorney, after which they released him. The test involved applying a solution composed of benzidine, sodium perborate, and glatial acetic acid over a large portion of Marrapese's body. According to Marrapese's testimony, the exposure to the solution caused an immediate burning sensation and resulted in a rash for some time thereafter.

In spite of these side effects and his strong objections to the test, Marrapese did not seek any medical attention, nor did he and his attorney investigate the properties of benzidine, which they were informed at the time was one of the substances that was applied to the skin. Only in 1980, when he read a newspaper account of a lawsuit by a prison inmate against certain Rhode Island state officials for application of benzidine, did he learn that benzidine is a carcinogen.[1] According to Marrapese's testimony, this knowledge of his prior exposure to a carcinogen caused him great mental distress. He brought suit under 42 U.S.C. § 1983 and also under state law in the United States District Court for the District of Rhode Island on April 15, 1980 against the State of Rhode Island; Officers Lionel Benjamin, Edward Pare, and Richard Quinn of the Rhode Island State Police; and Dr. David DeFanti, Director of the Criminalistics Laboratory of the University of Rhode Island. Marrapese claimed that the application of a carcinogen to his skin violated his rights under the fourth, sixth, ninth and fourteenth amendments and constituted negligence and a battery under Rhode Island law. The jury found that officers Benjamin and Pare were liable for violating Marrapese's fourteenth amendment substantive due process rights and for negligence under Rhode Island law. The jury found that Dr. DeFanti, who had supplied the chemicals for the test, allegedly without a warning label, had also been negligent under state law. The jury awarded plaintiff $25,000 in compensatory damages against these three defendants.

Defendants moved for judgment notwithstanding the verdict on the ground, *inter alia*, that Marrapese's causes of action were time barred. The district court denied the motion[2] and defendants appealed.

The parties agree that the relevant limitations period is three years, as R.I.Gen. Laws § 9–1–14 applies to section 1983 actions. *See Walden III, Inc. v. State of Rhode Island*, 576 F.2d 945 (1st Cir.1978). They differ, however, over the time of accrual of plaintiff's cause of action.

Defendants contend that the action accrued on March 16, 1975, when the test was administered. They argue that at that time, Marrapese knew of his injury because he had knowledge of the unpermitted appli-

---

* Of The District of Puerto Rico, sitting by designation.

1. The newspaper article apparently referred to a case that ultimately came to this court on appeal, *Clark v. Taylor*, 710 F.2d 4 (1st Cir.1983).

2. The court had previously ruled adversely to defendants on a similar motion made in advance of trial. *Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1224–26 (D.R.I.1980).

cation of the chemical, the name of the chemical, and the burning sensation and rash allegedly caused by his exposure to it. According to defendants, Marrapese's ignorance of the carcinogenic quality of benzidine did not prevent his cause of action from accruing then because that information would have been available to him in 1975 had he made sufficient inquiry. Marrapese, "armed with the facts about the harm done him, [could] protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing accrual of his claim would undermine the purpose of the limitations statute." *See United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) (medical malpractice claim under Federal Tort Claims Act accrued when plaintiff learned of his injury and its cause, not at later date when he discovered that injury resulted from negligence). Defendants therefore maintain that Marrapese's suit is time barred because he did not file until five years after accrual of his claims.

The district court rejected defendants' position. It held that any of Marrapese's claims based on "the skin irritation, offensive touching, or the procedural due process aspects of being taken down to the station house without probable cause" were time barred because Marrapese could have pressed suit on these claims in 1975. With respect to claims "based on the carcinogenic properties of benzidine," however, the district court found that the discovery rule, under which the limitations period does not begin to run until the plaintiff knows or should know of his injury, applies to delay accrual of the claims until 1980, when Marrapese learned of benzidine's carcinogenic properties. Thus, the court held that Marrapese's state law negligence

claims based on benzidine's carcinogenic properties and three of Marrapese's constitutional claims were not time barred: (1) his fourth amendment claim that the search was unreasonable in the manner in which it was conducted because of benzidine's carcinogenic properties; (2) his claim that the testing infringed his substantive due process rights because application of the carcinogen to his skin was "shocking to the conscience"; and (3) his claim that his right to privacy was invaded by application of a carcinogen to his skin.

We agree with the district court that accrual of Marrapese's causes of action [3] turns on when he knew or should have known of his injury.[4] We disagree, however, with the district court's application of the discovery rule in this case.

The district court's treatment of the accrual issue leads us, as an initial matter, to consider whether the policy against claim splitting bears on this case. The present trend, accepted by the *Restatement (Second) of Judgments* § 24 (1982), is

> to see ["claim"] in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

*Id.* comment (a), at 197. If this approach were applied to Marrapese's constitutional causes of action, his claims based on benzidine's carcinogenic properties would have to be viewed as one with his time-barred constitutional claims because of their com-

---

**3.** Because of the federal claims the jury found for Marrapese only on his substantive due process claim, that is the only constitutional cause of action whose timeliness is truly at issue.

**4.** *See Rivera Fernandez v. Chardon,* 648 F.2d 765, 767 (1st Cir.) (cause of action under section 1983 accrues "when plaintiff knows or has reason to know of the injury which is the basis of the action"), *rev'd on other grounds,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Rubin v. O'Koren,* 621 F.2d 114, 116 (5th Cir.1980); *Lavellee v. Listi,* 611 F.2d 1129, 1131 (5th Cir.1980); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975).

mon transactional basis.[5] Courts have recognized, however, an exception to the general rule against claim splitting where the plaintiff's "blameless ignorance" of his injury or its cause resulted in his not bringing suit until after the limitations period had elapsed. *See Bridgford v. United States*, 550 F.2d 978, 981–82 (4th Cir.1977); *Portis v. United States*, 483 F.2d 670 (4th Cir.1973); *see also Cox v. Stanton*, 529 F.2d 47, 49 n. 3 (4th Cir.1975) (by implication). Thus, the claim splitting issue and the issue of whether Marrapese was unreasonably dilatory in discovering the carcinogenic properties of benzidine are best treated together. Both questions require a determination of whether Marrapese possessed knowledge of the facts underlying his cause of action sufficient to put him on inquiry notice as to the carcinogenic properties of benzidine. Because we find that Marrapese had sufficient knowledge, we hold that delaying accrual under the discovery rule and creating an exception to the rule against claim splitting are not warranted.

## I. THE SECTION 1983 CAUSE OF ACTION

■ The injury forming the basis of Marrapese's section 1983 complaint was not a medical injury flowing from an act of malpractice but rather was an injury to his constitutional rights based upon the officers' forcing him to undergo a benzidine test against his will. Most of the facts constituting this injury were fully known to

Marrapese on March 16, 1975, the date that he was forced to undergo the test. He knew then that he was taken into police custody without a warrant, that he was forcibly medicated with benzidine, and that a burning sensation and a rash resulted. During the March 16 events his attorney, who was present, repeatedly challenged their legality.[6]

To be sure, Marrapese did not learn until several years later that benzidine was a carcinogen. But we think that the facts in Marrapese's possession after the incident were such as to make it reasonable for him to have made further inquiry as to the basis for any and all claims against the defendants arising from that incident. Had he done so, he could have discovered that benzidine was a carcinogen since, as Marrapese's own evidence demonstrated, it was then known in medical circles that benzidine was a carcinogen.

It is important to note that Marrapese not only suffered a burning sensation and rash, suggesting that the chemicals placed on his skin might be harmful or at least unpleasant, but he also suffered indignities that led his lawyer, not without reason, to charge the police at the very time of the events in question with constitutional violations based on conduct then fully known to everyone.

Marrapese's lawyer testified that during the March 16, 1975 incident he asked, and was told by the police, that Marrapese was not under arrest. He further stated,

---

**5.** The *Restatement (Second) of Judgments* § 19, comment (f), states the prevailing rule with respect to dismissals on a ground such as the statute of limitations. The dismissal operates as a bar in the jurisdiction in which it is rendered, even if the plaintiff in the second action seeks to change his theory of recovery and to rely on a longer limitations period. *Id.* reporter's note, at 168–69.

**6.** Plaintiff testified that,
[A]t the time they brought me to the big room, and I was with my attorney, and he was having an argument with Anthony Mancuso who is now the Police Chief in Providence, and he—Anthony Mancuso told me to take my clothes off, that they were going to give me a benzidine test, which I didn't know what

it was. So, my attorney was arguing with him, John Bevilacqua [plaintiff's attorney], and John Bevilacqua told me to keep my clothes on. Anthony Mancuso says, "Take your clothes off," a second time. My lawyer told me, "Keep your clothes on." The third time, Anthony Mancuso told me, "Take your clothes off or we're going to rip them off." So, I said to my attorney, "What do I do, John? Do I take them off or keep them on?" So, he said, "Take them off, but I want it known that we're—we're arguing the point that it's a violation of my constitutional rights."
Plaintiff's attorney, John Bevilacqua, objected "vehemently" to the benzidine test at least *seven* times according to his testimony at trial.

I said, I'd like to see my client released. They said, we're not releasing him. I said, well, then charge him, what is the charge. We haven't got a charge. It's still under investigation. That's what their response was to me. That's when the heated arguments began.

It is also established that the police had neither an arrest warrant nor a search warrant, facts with which Marrapese and his attorney were then acquainted, at the same time as the benzidine test. Further, Marrapese alleges that the police did not then have probable cause to arrest him. Under these circumstances, Marrapese had a clear section 1983 claim against the defendants, on other but related grounds, notwithstanding his ignorance of the malignant properties of benzidine.

Thus, given the search and seizure of Marrapese's person for evidence without a prior arrest or warrant and allegedly without probable cause, Marrapese could have claimed that the seizure was unreasonable, *see Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fourth amendment applies to involuntary detention during investigatory stage), and that the search also violated his fourteenth amendment rights. *See* 2 W. LaFave, *Search & Seizure* § 5.4(a), (b) (1978) (clear violation where search without arrest, warrant or probable cause to arrest); *United States v. Allen*, 337 F.Supp. 1041 (E.D.Pa. 1972) (search warrant required for subjecting defendant, not then in custody, to x-rays, blood test, and hair sampling); *cf. Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (warrantless taking of scrapings from fingernails upheld where had probable cause to arrest, search very limited, and evidence highly evanescent).

The above facts do not, of course, diminish the importance of Marrapese's later discovery that benzidine is a carcinogen: this fact greatly strengthened his section 1983 claim; it probably influenced the jury to find defendants' conduct "shocked the conscience," *see Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and so violated Marrapese's due process rights. Nonetheless, the fact that Marrapese already had a likely section 1983 claim against the state officials—a claim which his lawyer mentioned in repeated protests during the incident—indicates that what was hidden from him after the incident was not the existence of a cause of action under section 1983 arising therefrom but simply its full ramifications. *See Ashley v. United States*, 413 F.2d 490 (9th Cir.1969). Possessed of immediate knowledge that he had a civil rights claim stemming from the March 16 incident, Marrapese had a duty to exercise reasonable diligence to investigate and perfect his rights within the three years the statute allowed him following the wrongful conduct. Had he done so, research into the properties of the chemical that he was forced to submit to, and that stung him and caused a rash, was an obvious step. And had he pursued the research, he would have learned of the cancer-causing properties of benzidine.[7]

The case law supports such a view of Marrapese's duty of inquiry. In *Ashley*, a disabled veteran sued the government under the Federal Tort Claims Act ("FTCA")[8]

---

**7.** Marrapese asserted in his complaint, and reiterated in subsequent papers, that "the chemical benzidine was commonly known to cause cancer in human beings both prior to and subsequent to March [16], 1975." Additionally, Marrapese's expert witness, Dr. Walter Troll, testified that research in the 1930's suggested that benzidine possessed carcinogenic properties and that Dr. Troll had published papers on the link between benzidine and bladder cancer as early as 1965.

**8.** We rely on cases dealing with the timing of accrual of a claim under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), for guidance. Although we recognize that different considerations may apply in section 1983 actions and in FTCA suits, the problems courts encounter in resolving the accrual question under federal law are basically the same. The parties have used FTCA cases to make their arguments and many cases under one federal act have relied on cases under other federal acts for resolution of accrual questions. *See, e.g., Lavelle v. Listi*, 611 F.2d 1129, 1131 n. 4 (5th Cir.1980) ("We ... must assume that the federal standard for accrual of claims does not vary among these statutes, and

for a government doctor's alleged malpractice in injuring a nerve in the veteran's arm while attempting to take a blood sample. The veteran asserted that although he brought his suit after the two-year FTCA statute of limitations had run, his claim did not accrue until he learned of the permanence of the nerve injury and thus was timely. The court rejected this argument, emphasizing that a plaintiff may not delay his suit "until the time, however long, when he becomes knowledgeable as to the precise extent of the damage" resulting from the tortious act. 413 F.2d at 493.

In *Ashley,* as in *Marrapese,* the plaintiff knew he had been harmed, knew who was responsible for the harm, and could have discovered the full extent of the injury had he chosen to investigate. Cases going the other way that appear factually similar to this case and to *Ashley* are distinguishable because the plaintiffs exercised reasonable diligence in investigating their injuries but were unable to uncover the cause or the full extent of the injury, making those plaintiffs blamelessly ignorant of potential claims.

For example, in *Bridgford v. United States,* 550 F.2d 978 (4th Cir.1977), the dependent of a retired military officer brought suit under the FTCA to recover for the alleged malpractice of physicians at a naval hospital in performing a vein-stripping operation to alleviate a varicose vein condition. Immediately after the operation in June 1964 one of the operating physicians told Bridgford that his femoral vein had been mistakenly severed and had been sewn back together. The doctor assured Bridgford that the blood was flowing properly through the vein and when Bridgford experienced unanticipated postoperative difficulties, further reassured him that all was as it should be.

In August 1969 Bridgford noticed that a vein in his left buttock was enlarged and painful and, upon undergoing a venogram in 1970, was informed that the vein severed during the operation had become blocked. The Fourth Circuit held that Bridgford's suit, begun in 1972, was not barred by plaintiff's possible knowledge in the year of the operation of some nominal loss resulting from the severance of the femoral vein. The court noted that,

> Allowing the plaintiff, in effect, to split his cause of action between an earlier possible suit for negligence damages and this suit for substantial damages is not at odds with general principles of procedure.

> > Usually in cases where the plaintiff, because of *unavoidable* ignorance of the full extent of his injuries or of particular items of damage or by reason of mistake, unless due to negligence, fails to include his full claim in the first suit, the rule against splitting will not be applied and a second suit may be maintained for the balance of his claim. [Emphasis supplied.]

> 1 Am.Jur.2d *Actions* § 130 (1962) (footnotes omitted).

550 F.2d at 982.

The court concluded that it was not unreasonable for Bridgford to have failed to discover the blockage of his vein before 1970 in view of his having investigated the cause of his symptoms with his doctor and received a credible, though erroneous, explanation from him.[9]

Similarly, in *Portis v. United States,* 483 F.2d 670 (4th Cir.1973), the Fourth Circuit ruled that the facts of the case called for an exception to the rule against claim splitting and warranted a delay in the accrual of the plaintiff's cause of action. In *Portis,* like the present case, two injuries flowed from the same transaction. One of

---

we are fully justified [in this section 1983 case] in relying on cases under other acts."); *Bireline v. Seagondollar,* 567 F.2d 260 (4th Cir.1977) (FELA cases relied on in section 1983 cases), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979); *Cox v. Stanton,* 529 F.2d 47 (4th Cir.1975) (same).

9. The court also expressed some doubt as to whether Bridgford *could* have discovered in 1964 that he had incurred an actual loss as a result of the severance of his femoral vein. 550 F.2d at 982.

the injuries was known at the time of the transaction and was time barred; the other was only diagnosed after the statute of limitations would have run absent delayed accrual.

Portis, then age 15 months, underwent surgery in 1963 and was negligently given injections of Neomycin instead of receiving the treatment orally. The negligent injections immediately caused acute kidney poisoning, nearly resulting in Portis's death. The renal poisoning was corrected and Portis's parents never sued for the negligent treatment underlying the poisoning. Portis's hearing began to deteriorate, a fact her mother noticed in 1964. Although Portis underwent extensive testing and it was known that Neomycin could have caused the hearing loss, it was not until 1969 that a doctor finally diagnosed Portis's problem as a profound neurosensory hearing loss related to Neomycin toxicity. Portis's father sued in 1970 under the FTCA.

The district court found that Mrs. Portis knew in 1963 that there was a "distinct possibility" of future hearing loss as a result of the malpractice. Applying *Ashley v. United States*, 413 F.2d 490 (9th Cir. 1969), the lower court concluded

> that the resulting hearing loss could not be treated as a separate cause of action so as to start the statute of limitations running anew in 1969 (at time of first diagnosis), but was merely another manifestation of the same negligent 1963 act which caused renal failure, and that the

suit was therefore barred because it accrued in 1963.

*Portis*, 483 F.2d at 672.

Although the Fourth Circuit accepted the district court's finding as not clearly erroneous, it believed that the district court was mistaken to rely on *Ashley*. In *Ashley*, the court said, the plaintiff knew of his injury at the time of its occurrence and belatedly sued for the same injury, asserting as an excuse that he did not know the injury was permanent.[10]

The court contrasted *Ashley* with Portis's case, where the unknown fact that delayed the lawsuit was "not the nature and extent of Leslie's injury (loss of hearing), but rather what caused it." *Portis*, 483 F.2d at 673 (footnote omitted). The court felt the rule against claim splitting should not apply to a plaintiff who, notwithstanding diligence, remains ignorant of the cause of his injury. Under that principle, the court found Portis's suit to be timely.[11]

Neither the *Portis* nor the *Bridgford* courts used the plaintiff's possible awareness that he had a potential cause of action at the time of the incident as a major factor in determining whether the plaintiffs should be charged with sufficient knowledge of injury and causation to deny the requested delay in accrual. This is because, in both cases, the plaintiffs had in fact investigated their injuries and had not

---

**10.** The court stated:

> We agree with the Ninth Circuit that one who knows that an injurious tort has been committed against him may not delay the filing of his suit until the time, however long, when he learns the precise extent of the damage resulting from the tort. That is all that *Ashley* holds, and it has long been settled that the running of a statute of limitations does not await determination of the full extent of the injury.

*Portis*, 483 F.2d at 672; *accord Hulver v. United States*, 562 F.2d 1132, 1137 (8th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978); *Toal v. United States*, 438 F.2d 222 (2d Cir.1971); *Girard v. United States*, 455 F.Supp. 502 (D.N.H.1978).

**11.** The court explained that:

> As we stated in *Young v. Clinchfield R.R.*, 288 F.2d 499, 503 (4th Cir.1961):
> [W]hen the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrued does not depend on when the injury was inflicted. To the contrary, the cause of action accrues only when the plaintiff has reason to know he has been injured. Generally this will be when his condition is diagnosed.
> While *Young* involved the situation where the *injury* was not immediately detectable, we believe the same rationale is applicable where, as here, the *cause* of the injury was neither known nor reasonably detectable.

*Portis*, 483 F.2d at 673.

been correctly diagnosed.[12] The courts permitted the plaintiffs to split their claims because, due to their "blameless ignorance," they could not be expected to bring their suits within the limitations period. *See Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949).

Finally, in a section 1983 case arguably analogous to this case, the Fourth Circuit allowed the plaintiff to split her claim without specifically mentioning the claim splitting issue. *Cox v. Stanton,* 529 F.2d 47 (4th Cir.1975). The plaintiff, Cox, brought suit under section 1983 and the thirteenth and fourteenth amendments for damages resulting from a sterilization operation performed pursuant to a North Carolina statute. The Fourth Circuit reversed the district court's judgment on the pleadings for the defendant, holding that where the gravamen of the claim was the fact of permanent sterilization, rather than merely the fact that the operation had been performed, and the plaintiff did not discover the permanency of the sterilization until less than three years before bringing suit, the action was not time barred. The court noted in a footnote,

> In her lengthy complaint, plaintiff makes many allegations which, if standing alone, would constitute a cause of action.... Such claims are time barred, because they rest on facts which the plaintiff knew or should have known more than three years before she filed suit. *Ashley v. United States,* 413 F.2d 490 (9th Cir.1969).... But with respect to her claim for damages, plaintiff repeatedly alleges the fact of *permanent* sterilization. Thus, we treat as the gravamen of the claim for damages the fact of permanent sterilization. Plaintiff was not advised of the fact until the fall of 1970. Her allegations of earlier denial of

other rights, to the extent that they are pertinent to her claim for damages, are simply background or context in which the alleged wrong of permanent sterilization occurred.

*Cox,* 529 F.2d at 49 n. 3.

The court found the plaintiff's claims timely without inquiring into whether the plaintiff should have discovered earlier the fact of the permanence of the sterilization.[13] It did not find the fact that she would have had other claims based on the unconsented operation put her on inquiry notice to investigate the full extent of the injury done her, which is understandable given the circumstances. Cox alleged that "she was subjected to the sterilization surgery because she was black, she was poor, she was a member of a family receiving welfare payments and she was an unwed [18 year old] mother, that she was denied proper notice and opportunity to appear before the Eugenics Board, and that she was never examined or professionally evaluated before she was deemed mentally defective." *Id.* at 49 n. 3. Cox apparently did not have a lawyer who counselled her that the procedure violated her rights and she probably did not have the resources to secure one. Thus, it would be unfair to find that the existence of the possible causes of action put Cox on inquiry notice.

By contrast, Marrapese had a lawyer present at the time his injury was inflicted. His lawyer alerted Marrapese to the dubious legality of the seizure and the search. Additionally, the record reveals that Marrapese was better equipped to follow up on this information and investigate the full extent of the injury done him.

The policies underlying section 1983, the rule against claim splitting, statutes of limitation, and the discovery rule also pro-

---

**12.** Additionally, in *Bridgford,* the court noted that the plaintiff may not have been able to bring an action in the first instance because even his nominal injury would have been undiscoverable at the time of the injury. *See note 9, supra.*

**13.** The court did mention in its recitation of the facts that the Eugenics Board authorized a tubal

ligation, which is reversible, but Cox was instead subjected to an irreversible bilateral salpingectomy sterilization. This fact, read in conjunction with the Cox's circumstances, *see infra,* supports the court's conclusion that it was reasonable for Cox to believe that the procedure was reversible until she learned from her doctor that she could never again bear children.

vide guidance on the question of whether to find that knowledge of the facts underlying his time-barred claims put Marrapese on inquiry notice of benzidine's carcinogenic properties, so as to preclude delayed accrual of his dangerous exposure claims and exception of his case from the general prohibition of claim splitting.

One may argue that the broad remedial purposes behind section 1983 warrant a liberal application of the discovery rule in this case. The more persuasive argument, however, is that the humane purposes of section 1983 are adequately safeguarded by application of the discovery rule, which is itself a liberalization of traditional accrual rules; further expanding the circumstances in which the rule operates to delay accrual and thereby contracting a plaintiff's duty to investigate may serve the purposes of section 1983 but it does so at the expense of other important interests, such as those underlying statutes of limitations and, in this case, the rule against claim splitting.

As the Supreme Court noted, statutes of limitation represent a

> judgment that it is unjust to fail to put an adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." ... These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of documents, or otherwise.

*Kubrick v. United States*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979).

In this case, the rationale behind the rule against claim splitting lends added weight to the argument that the discovery rule should be strictly applied. The rationale is similar to that underlying statutes of limitation: fairness to the defendant and sound judicial administration require that at some point litigation over the particular controversy must cease. *See Restatement (Second) of Judgments* § 19, comment (a), at 161–62.

■ Finally, the policies behind the discovery rule do not warrant a delayed accrual in Marrapese's case. The theory behind the rule is simple—"[l]imitations should not bar a claimant before he has a reasonable basis for believing he has a claim." *Exnicious v. United States*, 563 F.2d 418, 420 (10th Cir.1977). Our problem is discerning what a "reasonable basis" is in light of the circumstances of this case. The proper application of this standard can perhaps be gauged best by referring to the reason for the development of the discovery rule. The rule was originally intended to apply in cases where the plaintiff could not have discovered his injury or its cause before the limitations period expired.[14] In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Court held that a claim under the Federal Employers' Liability Act ("FELA") did not accrue until the plaintiff's injury became manifest. Urie had contracted silicosis from working as a

---

**14.** The *Restatement (Second) of Judgments* describes the development of the rule:

> One group of cases in which there has been extensive departure from the earlier rule that the statute of limitations runs although the plaintiff has no knowledge of the injury has involved actions for medical malpractice. Two reasons can be suggested as to why there has been a change in the rule in many jurisdictions in this area. One is the fact that in most instances the statutory period within which the action must be initiated is short— one year, or at most two, being the common time limit. This is for the purpose of protect-

ing physicians against unjustified claims; but since many of the consequences of medical malpractice often do not become *known or apparent* for a period longer than that of the statute, the injured plaintiff is left without a remedy. The second reason is that the nature of the tort itself and the character of the injury will frequently *prevent knowledge* of what is wrong, so that plaintiff is forced to rely upon what he is told by the physician or surgeon.

*Id.* § 899, comment (e), at 444–45 (emphasis added).

fireman on a steam locomotive, but his condition was not diagnosed until he became too ill to work. The Court, reluctant to charge Urie with the "unknown and inherently unknowable," held that Urie's "blameless ignorance" of the fact of his injury operated to delay accrual under the FELA until his disease manifested itself. 337 U.S. at 169–70, 69 S.Ct. at 1024.

■ The Supreme Court recently held that a plaintiff's ignorance of the existence of a legal right of action based on his injury does not operate to delay accrual of his claim. *See Kubrick v. United States*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The Court's broad language endorses our view that the duty of investigation under the discovery rule is not a negligible one, especially where a plaintiff knows the essential facts underlying his claim:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. *The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.*

*Kubrick*, 444 U.S. at 122, 100 S.Ct. at 359 (emphasis added).

Read in the light of this history, we hold that where, as here, the effects of the benzidine were not "inherently unknowable," and the plaintiff already knew that certain of his federal constitutional rights had been violated in the challenged transaction, and that the benzidine had caused a painful reaction, he could not simply sit back without investigating all his potential claims against the defendants flowing from this transaction. This included looking into the possible side effects of the benzidine test, especially since the medical effects of the involuntary procedure were obviously relevant to the question of constitutional harm. *See Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). We accordingly reverse the judgments against the defendants under the section 1983 claims.

## II. NEGLIGENCE CLAIMS UNDER STATE LAW

We also conclude, for much the same reasons, that Marrapese's state law negligence claims are time barred. The same three-year statute of limitations is applicable.

■ Marrapese's cause of action arose on March 16, 1975, when benzidine was applied to his skin. This injury, which is the basis of his action, should not be confused with the damages claimed to result from it. In the absence of demonstrable physical harm, Marrapese seeks recompense for his emotional distress once he belatedly learned of the risks associated with the application of benzidine. But he is *not* seeking recovery on a theory of negligent infliction of emotional distress, where his "injury" would constitute the emotional distress that first arose upon learning of the dangers of benzidine. Here the tort occurred on the day of the benzidine test.

■ The general rule in Rhode Island is that a negligence cause of action for personal injury accrues at the time of injury. *See Byron v. Great American Indemnity Co.*, 54 R.I. 405, 407, 173 A. 546, 547 (1934); *cf. Romano v. Westinghouse Electric Co.*, 114 R.I. 451, 459, 336 A.2d 555, 559 (1975); *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968). Exceptions to the rule have been created in cases where a product may have a latent, undiscoverable defect, *see Romano*, 114 R.I. 451, 336 A.2d 555, where medical malpractice resulted in an injury that was not discoverable or discovered within the limitations period, *see Wilkinson*, 104 R.I. 224, 243

A.2d 745, and where a possible cause of action remains undiscovered due to fraud or concealment, *see Reynolds v. Hennessy,* 17 R.I. 169, 20 A. 307 (1890) (§ 9–1–20). *See Von Villas v. Williams,* 314 R.I. 309, 314, 366 A.2d 545, 548–49 (1976). In the malpractice "discovery cases," the cause of action accrues when "the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered, that he has sustained an injury" due to the defendant's tortious conduct. *Wilkinson,* 104 R.I. at 234, 243 A.2d at 751.

The discovery rule generally is applied to delay accrual; the same facts that persuade courts to find the rule applicable, *i.e.,* plaintiff's inability to know of the harm, also argue for a finding that plaintiff, "in the exercise of reasonable diligence," could not have discovered his injury within the limitations period. The converse is also true. For the same reasons already stated at length in our discussion of the section 1983 claims, *supra,* we are persuaded that Marrapese's injury was discoverable. The discovery rule, if applied, yields the same result as the general accrual rule because Marrapese could and should, in the exercise of reasonable diligence, have discovered the full extent of his injury within the statutory three years following the March 16, 1975 incident. As we have pointed out, he was fully aware from the time of the incident of most of the details, including the questionable and likely tortious nature of the police conduct, *see Mann v. Cannon,* 731 F.2d 54, 63–64 (1st Cir.1984) (discussing Rhode Island false arrest law), the names of the chemicals applied, the burning sensation, and the ensuing rash. We think that he was on inquiry notice as to further aspects of the transaction, and could not simply sit back, without further investigation, and permit the statutory period to lapse.[15]

We accordingly hold that the claims were time barred.

*Reversed.*

BOWNES, Circuit Judge (dissenting).

I respectfully dissent. While the court's opinion marshalls the relevant precedent and presents it fairly and completely, I do not think it has been applied correctly. The issue, as I see it, is whether the plaintiff, in the exercise of due diligence, should have discovered the carcinogenic properties of the benzidine on his own initiative. In distinguishing this case from *Cox v. Stanton,* 529 F.2d 47 (4th Cir.1975), the majority puts great emphasis on the fact that Marrapese had a lawyer present at the application of the chemical who was clearly aware of the constitutional violations created because of the lack of probable cause, lack of an arrest warrant, and the battery. I do not believe under the facts of this case that the lawyer's presence was enough to make the difference. The application of a carcinogenic chemical to the skin by the police is conduct which "shocks the conscience." I do not believe that a competent lawyer should be expected to consider such an outrageous possibility when determining whether a case is worth pursuing. Without the carcinogenic properties of the benzidine, the 1983 case, while strong on law, was short on damages. Marrapese was released within a short time and a minor rash is not a compelling basis for a civil rights action against the police. So while I agree with my brothers that had the case been pursued the carcinogenic properties would probably have been discovered, I do not agree that the plaintiff should have been expected to pursue the case at all or investigate the effects of benzidine on the skin. Even a lawyer should be entitled to assume that police would not use a cancer causing substance on a suspect. I would affirm the judgment of the district court.

---

**15.** This is not like the typical malpractice case in which the victim initially has no awareness of an injury or is unable to discern its cause. Marrapese is more akin to a patient whose doctor not only is negligent in his medical treatment, but also abuses the patient in the course of the treatment or commits some other related tortious act that should alert the patient to investigate *all* his possible legal claims against the doctor.